**Troy R. NEAL, Respondent,**

**v.**

**Alberta D. NEAL, Appellant.**

**No. ED 90390.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 17, 2009.

Michael P. Cohan, The Cohan Law Firm, LLC, St. Louis, MO, for Appellant.

Deborah Benoit, Kruger & Benoit, L.L.C., St. Louis, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

## Introduction

Alberta D. Neal (Wife) appeals from the trial court's Amended Judgment of Dissolution of Marriage (Amended Judgment), *inter alia*, awarding Troy R. Neal (Husband) and Wife with joint legal custody of the parties' minor child, ordering Husband to pay monthly child support, and dividing the parties' property and debts. We affirm in part and reverse in part, remanding this case to the trial court with instructions.

## Background

Husband and Wife were married on May 6, 1995. One child, C.N. (Daughter) was born of the marriage on July 22, 1995. The parties separated in September 2004. Husband filed his Petition for Dissolution (Petition) on May 15, 2006. Thereafter, Wife filed her Answer to Petition for Dissolution for Marriage and Counter–Petition for Dissolution of Marriage (Answer and Counter–Petition) on June 13, 2006. The trial court conducted a hearing on May 7, 2007, concerning the Petition, at which the following evidence pertinent to the issues on appeal was adduced.

At the time of the hearing, Daughter was 11 years old. Since Husband and Wife separated, they alternated physical custody of Daughter on a weekly basis. The parties agreed to continue that basic schedule, as well as joint legal custody. Husband proposed that the exchange take place at 6:30 a.m. on Mondays, which would allow for Daughter to spend an entire Monday holiday with the parent in custody. He also testified that a Sunday evening exchange interrupted their Sunday evening church services. Wife testified that she preferred a Sunday evening exchange because "the evening works better for dropping [Daughter] off and picking her up" and because there were problems in the past with Monday exchanges.

Wife has another child, R.N., not of the marriage. The child lives with Wife, but Wife receives no child support for him and Wife pays all of R.N.'s expenses.

Husband is employed at Boeing as an engineer. Husband testified that his income for the year prior to trial was set forth on his Exhibit 8, his 2006 W–2, totaling $88,016.07. Exhibit 8 lists varying amounts for Husband's income, including Medicare wages of $97,633.55, Social Security wages of $94,200, and wages, tips, and other compensation of $82,633.55. Wife testified that Husband's salary was approximately $95,000 per year or more.

Husband testified that he traveled for business approximately six times in 2005, and then approximately nine times in 2006 when he was promoted to a manager. Husband testified that he could always schedule his future travel to coincide with times he would not have custody of Daughter, and that a right of first refusal was acceptable if he needed to travel during his custody. Wife also agreed to a right of first refusal. Wife requested that no "make-up time" be allowed after traveling because it disrupted her family plans.

Wife had been employed at Reuters America in the payroll department, with a 2005 income of $58,038.59. Wife quit her job at Reuters on April 28, 2006, because she was being asked to engage in frequent travel, including a request that she spend six weeks in India. Wife stated on the record that neither she nor Husband had family in town to watch Daughter on short notice. Wife testified that after she quit her job at Reuters, she cashed out $6,251.54 from her 401(k) in June 2006, for

living expenses. Wife added that she thought she would be working and "never dreamed that [she] would be unemployed for that long." Wife gained new employment in January 2007 as a payroll manager for a small company with no traveling outside of Missouri. Wife testified that her new salary is $57,000 per year, without overtime.

Husband testified that he borrowed against his Boeing Voluntary Investment Plan, a 401(k) plan, to pay credit card debt that he carried in his name alone. He borrowed in 2002, 2005, and 2006, totaling $21,675.25. Husband testified that he borrowed $15,000 or $16,000 in 2006, following the separation. Husband further testified that he paid about $10,000 to credit cards and the rest went to things like bowling, clothes for Daughter, and eating out. Husband testified that he paid off the first loans from 2002, and that two loans remain outstanding. Wife testified that the parties incurred no joint debts after the separation in 2004, and therefore requested that Husband's 401(k) account be divided equally without her being charged with Husband's loans.

Husband testified that during the separation, he paid for 100% of Daughter's child care expenses, all of her clothing, school expenses, food expenses, field trips, extracurricular activities, sporting events, hair appointments, and her cell phone. Husband was unaware of any clothing that Wife had purchased for Daughter, except flip-flops and a pair of tennis shoes. Wife testified that she provided food and clothing for Daughter, and she paid for Daughter's bowling, cooking classes, slumber parties, and movie theater tickets. Wife testified that she received no child support from Husband since the separation.

Husband inherited almost $90,000 from his deceased step-mother in 1994, before he was married to Wife. Husband testified that he received a retirement account of $15,266 as part of the inheritance, and that he transferred those funds into a Roth IRA in 2000, still in his name only. Husband introduced into evidence Exhibit 17, which included a death certificate, tax return, probate documents from the attorney handling his step-mother's estate, and a letter from the attorney stating that Husband received the Fortis First Trust IRA paid to him as a death beneficiary totaling $15,266. Exhibit 17 also included documents of an account statement for a Roth IRA listed in Husband's name only with Fidelity Investments, showing a transfer-in by check in the amount of $11,341.73 in May, 2000. Husband testified that the funds deposited into the Roth IRA account in 2000 were the same funds received from his inheritance, and which were transferred from Fortis, to Stifel Nicolaus, and then to Fidelity Investments. Husband testified that his Roth IRA account with Fidelity has continued, and that some portion of the account is now with his Roth IRA account at American Funds. Wife testified that Husband inherited some money from his step-mother, but Wife believed the $11,341.73 deposited into Husband's Roth IRA in 2000 came from the parties' savings.

Husband testified that he possessed Boeing Stock Options, valued at about $8000. Those options were not vested.

Following trial, and pursuant to the trial court's order, each party submitted his or her proposed findings of fact and conclusions of law. The trial court entered its Judgment of Dissolution, Division of Property and Debts, and Parenting Plan (Judgment) on June 13, 2007.

Wife filed a Motion for Rehearing on June 27, 2007. In her motion, Wife raised several issues, including her allegations that the trial court failed to properly consider the issues presented in the dissolu-

tion proceeding by adopting for its Judgment Husband's proposed judgment and parenting plan verbatim. Wife further argued that many inconsistencies exist in the trial court's Judgment, and that the parenting plan is unsupported by the evidence presented at trial. Wife argued that the trial court needed to add or clarify language to include a right of first refusal if the custodial parent is unavailable, transportation for Daughter, and itinerary and contact information when traveling with Daughter outside of the St. Louis Metropolitan area. Wife further claimed that the Civil Procedure Form Number 14 (Form 14) adopted by the trial court incorrectly stated Husband's income, failed to give Wife credit for her child R.N., and incorrectly stated Wife's income. Further, Wife argued that the 34% custody credit awarded to Husband was too high, and that Wife should have received an extra tax deduction for Daughter, retroactive child support, and a wage withholding order against Husband. Wife also claimed the trial court incorrectly found that $15,000 inherited by Husband was used to establish Husband's IRA in 2000, the trial court failed to order either party to pay the marital residence's mortgage, utilities and upkeep until the house is sold, failed to set forth detailed procedure for selling the marital residence, failed to charge Husband with the loan balance he took from his Boeing Company Voluntary Investment Plan, failed to charge Husband with his cashed stock options of $13,433.81, failed to address Husband's failure to disclose his stock options, and should have awarded the parties with half of each of their bank accounts rather than Husband with his accounts and Wife with hers. Finally, Wife claimed that the trial court failed to order Husband to pay Wife's attorney fees.

On August 15, 2007, the trial court heard both parties' argument on Wife's Motion for Rehearing, granting part of Wife's requests but denying other parts. The trial court then entered an Amended Judgment of Dissolution of Marriage (Amended Judgment) on August 30, 2007, *inter alia*, calculating child support via Form 14 utilizing Husband's testimony as to his income, awarding Wife child support effective May 1, 2007, finding that $15,000 of Husband's Roth IRA was separate property from his inheritance, and charging Wife with the funds withdrawn from her retirement account to support herself after she quit her job at Reuters.

This appeal follows.

## Points on Appeal

Wife raises five points on appeal. In her first point, Wife claims the trial court erred when it adopted Husband's Proposed Judgment virtually verbatim. Wife argues that the inconsistencies contained in the judgment show that the trial court failed to appropriately consider the evidence before it when it chose to adopt Husband's proposal for its judgment.

In her second point, Wife argues the trial court misapplied the law, entered a decision against the weight of the evidence and unsupported by the evidence, and abused its discretion with its Form 14 calculation. Wife alleges that the income amounts on the court's Form 14 are not supported by the evidence and do not reflect the funds that the party has available to support his or her child because the trial court used an income figure for Husband based solely on Husband's post-tax income, rather than Husband's entire income, and also used two different income figures for Wife in the judgment and on the Form 14. Wife claims that the erroneous income figures result in an incorrect Form 14 calculation.

In her third point, Wife asserts that the trial court's judgment awarding Husband the value of 50% of her withdrawn 401(k) as marital property is unsupported by the evidence and constitutes an abuse of discretion. Wife claims the trial court abused its discretion when it charged her with funds withdrawn from her retirement account post-separation for living expenses, but did not charge Husband with funds withdrawn from his investment account post-separation for living expenses.

In Wife's fourth point, she argues that the trial court abused its discretion when it failed to award Wife retroactive child support because Wife earned less than Husband following the separation and provided significant support for the child.

In her fifth and final point, Wife claims the trial court's decision to set aside $15,000 from Husband's IRA as his separate property was against the weight of the evidence. Wife argues that property acquired during the marriage is presumed marital unless proven to be separate by clear and convincing evidence, and that Husband failed to trace the funds in his Roth IRA to his 1994 inheritance. Wife further argues that Husband opened the Roth IRA with Fidelity with only $11,000 instead of $15,000, and that the presumption that Husband's current Roth IRA is marital property should have controlled.

*Standard of Review*

■ We review a non-jury case under Rule 73.01(c). The trial court's judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We defer to the trial court's determinations of credibility and view the evidence and the inferences that may be drawn therefrom in the light most favorable to the judgment. *Vinson v. Adams*, 192 S.W.3d 492, 494 (Mo.App. E.D.2006).

*Discussion*

## I. Verbatim Adoption of Proposed Findings and Judgment, While Strongly Disfavored, is Not Reversible Error.

Wife's first point is premised primarily on her allegation that the trial court adopted Husband's Proposed Judgment "virtually verbatim" as its own when issuing its Judgment. Wife argues the "verbatim adoption" of Husband's proposal, along with inconsistencies found in the judgment, demonstrate the trial court's failure to appropriately consider the evidence before adopting Husband's proposal.

■ The verbatim adoption of a proposed judgment or order has been routinely criticized by Missouri courts. *Nolte v. Wittmaier*, 977 S.W.2d 52, 57 (Mo.App. E.D.1998). We agree with our Supreme Court that "when a court adopts in its entirety the proposed findings of fact and conclusions of law of one of the parties, there may be a problem with the appearance. The judiciary is not and should not be a rubber-stamp for anyone." *State v. Griffin*, 848 S.W.2d 464, 471 (Mo. banc 1993). Instead, "[t]rial judges are well advised to approach a party's proposed order with the sharp eye of a skeptic and the sharp pencil of an editor." *Nolte*, 977 S.W.2d at 58, *quoting Massman Constr. Co. v. Mo. Highway & Transp. Comm'n*, 914 S.W.2d 801, 804 (Mo. banc 1996). Thus, a trial court should receive proposals from the parties and then prepare its own specific findings of fact, conclusions of law, and judgment. *Id.* However objectionable we consider this practice, "the verbatim adoption of a party's proposed findings of facts and conclusions of law is not per se

erroneous." *Id.*, *citing Ulreich v. Kreutz*, 876 S.W.2d 726, 728 (Mo.App. E.D.1994). Though this is not a favored practice, it does not constitute reversible error in and of itself. *Crow v. Crawford & Co.*, 259 S.W.3d 104, 113 (Mo.App. E.D.2008). Our review is nevertheless guided by *Murphy v. Carron*, 536 S.W.2d at 32. Upon our examination of the record, a trial court's entry of an amended judgment may show that the trial court gave the necessary judicial consideration to the issues before it. *See Stelling v. Stelling*, 769 S.W.2d 450 (Mo.App. W.D.1989).

As compelling as Appellant's argument may be, we are unable to engage in the scope of review requested because the necessary pleadings are not before us. Although Wife claims that the trial court adopted "virtually verbatim" Husband's proposed judgment, she fails to include in the legal file a copy of Husband's proposed judgment upon which her first point on appeal is grounded. In her brief, Wife suggests the trial court appeared to "white out" the words "Petitioner's Proposed" on Husband's proposed judgment, and then entered that document as its own Judgment. While Wife's assertion may indeed be correct, we are left to speculate as to the trial court's actions because we have not been provided with any document that is labeled "Petitioner's Proposed Judgment of Dissolution of Marriage." We are then left to assume facts about the content of Husband's proposed judgment, as well as the trial court's actions upon receipt of said proposed judgment. That we will not do.

In his brief, Husband does not acknowledge that the trial court adopted its proposed judgment "virtually verbatim," but states that the judgment of the trial court substantially adopted the proposed order submitted by Husband. It is with this background that we will consider the issues raised by Wife in her first point.

■ We will not engage in a comparison of individual provisions contained within the Husband's proposed judgment and the trial court's Judgment, as we have nothing to provide a basis for comparison. However, despite the alleged similarities between Husband's proposed judgment and the trial court's Judgment, the record before us shows that Wife filed a Motion for Rehearing expressing her concerns in this regard. The trial court granted Wife a hearing on her motion, reconsidered the issues before it, and ruled favorably for Wife on some of the issues raised by her. The trial court then entered an Amended Judgment in the case. The record contains substantial evidence to support the Amended Judgment, and we cannot find that the Amended Judgment is against the weight of the evidence. Wife argues that the reasons set forth in the Amended Judgment for certain provisions contained therein demonstrate a lack of consideration of the evidence presented to the trial court. We disagree.

Both Wife and Husband submitted proposed parenting plans to the trial court. Their separate parenting plans contained some similar provisions and some differing provisions. The trial court was left to decide certain details of a joint custody plan upon which the parents were unable to agree. In its discretion, the trial court ordered a plan allowing for a Monday morning exchange of Daughter instead of Wife's preference for a Sunday evening exchange. Citing its preference for a Monday morning exchange of Daughter does not evidence the trial court's lack of consideration for Wife's preference. The record is void of any indication that the trial court's actions on this issue reflect anything other than what the trial court

believed was in the best interest of the child.

■ Wife also claims that the trial court's provision for alternating major holidays provides for alternating custody of Daughter on only Thanksgiving, Christmas, and during spring break, and fails to address additional holidays such as President's Day, Independence Day, Martin Luther King weekend, Memorial Day, Labor Day, and Halloween. While Wife's proposed plan to add certain holidays to this provision is not unreasonable, we do not find, under our scope of review as directed by *Murphy v. Carron*, 536 S.W.2d at 32, that the exclusion of these additional holiday days from the Amended Judgment evidences the trial court's lack of careful consideration of the parenting plan proposed by Wife and of the evidence related thereto.

Wife argues that the initial parenting plan failed to contain the standard language of St. Louis County parenting plans that requires a party to inform the other party of the itinerary and contact information when traveling with the child outside of the St. Louis Metropolitan area. This requirement was the subject of much testimony at trial, and was important to Wife. The fact that the trial court included such language in the Amended Judgment is an indication that the trial court gave due consideration to Wife's request and the evidence related thereto.

■ Wife further attacks the Amended Judgment with her argument that the trial court's adoption of Husband's Form 14 using an income of $58,032 per year for Wife is internally inconsistent with the trial court's judgment finding Wife's income to be $57,000 per year. We disagree. The trial court's findings stated that "Wife is employed making $57,000 per year and has

a work history of making income greater than that amount. She voluntarily left her job at Reuters America where she earned $58,000 in 2005." The trial court may impute employment income to a party seeking maintenance "according to what he or she could earn by use of his or her best efforts to gain employment suitable to his or her capabilities." *Breihan v. Breihan*, 73 S.W.3d 771, 775 (Mo.App. E.D. 2002) (citations omitted). Accordingly, the trial court's adoption of Husband's Form 14 with the higher income was not inconsistent with the trial court's findings and imputing income to Wife.

Finally, Wife argues that the trial court's Amended Judgment orders the payment of child support without a wage withholding order, and fails to state any reason for the omission of a wage withholding order. Wife asserts that this failure indicates a lack of independent, thoughtful consideration to the issues by the trial court, and requires reversal. Section 452.350.2, RSMo 2000 [1] states:

For all orders entered or modified in IV–D cases, and effective January 1, 1994, for every order for child support or maintenance entered or modified by the court pursuant to the authority of this chapter, or otherwise, income withholding pursuant to this section shall be initiated on the effective date of the order, except that such withholding shall not commence with the effective date of the order in any case where:

(1) One of the parties demonstrates, and the court finds, that there is good cause not to require immediate income withholding. For purposes of this subdivision, any finding that there is good cause not to require immediate withholding must be based on, at least, a written determination and an explana-

1. All subsequent statutory citations are to RSMo 2000, unless otherwise indicated.

tion by the court that implementing immediate wage withholding would not be in the best interests of the child and proof of timely payments of previously ordered support in cases involving the modification of support orders; or

(2) A written agreement is reached between the parties that provides for an alternative arrangement.

■■■■■ Although an immediate income withholding is not required under Section 452.350.2, a party must demonstrate good cause to be exempt from the immediate income withholding, and the trial court must make a written finding that implementing immediate wage withholding is not in the child's best interests in order to be exempt from the statutory requirement. *Carter v. Carter*, 940 S.W.2d 12, 17 (Mo. App. W.D.1997). The record shows that Husband presented evidence of good cause not requiring immediate income withholding. Specifically, the record shows that Husband paid the majority of Daughter's expenses during the separation, and that Wife never filed a motion for temporary support during the pendency of the case. However, despite such evidence, the record before us indicates that the trial court did not make the statutorily required "written determination and explanation" that implementing immediate wage withholding would not be in Daughter's best interest as is required by statute. Nor is there any evidence that Husband executed and filed with the court a voluntary income assignment that would moot this issue. *See McCandless–Glimcher v. Glimcher*, 73 S.W.3d 68, 82 (Mo.App. W.D.2002). While we find no basis to reverse the Amended Judgment for any of the reasons articulated by Wife in her first point on appeal, we are compelled to remand this case with instructions that the trial court review the Amended Judgment, and make the appropriate entries so as to conform to the statutory requirements of Section 452.350. *See In re Marriage of Bell*, 84 S.W.3d 467, 469 (Mo.App. E.D.2002).

Point denied.

## II. Trial Court Made No Income Error on Form 14.

In her second point on appeal, Wife argues that the trial court's Form 14 is not supported by the evidence. Wife claims that the trial court erred when it used Husband's post-tax income rather than Husband's entire income on its Form 14, and by using a different income figure for Wife in the Amended Judgment than the income figure for Wife set forth in the trial court's Form 14. Wife argues that these erroneous income figures result in an incorrect Form 14 calculation, and therefore, any judgment based on the Form 14 calculation was not supported by substantial evidence. *See Glimcher*, 73 S.W.3d at 72. We disagree.

■■■■■ In making child support determinations, the trial court is required to determine the presumed correct child support amount pursuant to Rule 88.01 and Form 14. *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App. W.D.1996). This mandatory mathematical calculation ensures that child support guidelines will be considered in every case as mandated in Section 452.340.7 and Rule 88.01. *Id.* Additionally, after considering all relevant factors, the trial court must determine whether the presumed child support amount is unjust or inappropriate. *Neal v. Neal*, 941 S.W.2d 501, 504 (Mo. banc 1997).

■■■ Pre-tax income may be included as income on a Form 14. *Fulton v. Adams*, 924 S.W.2d 548, 554 (Mo.App. W.D.1996). Likewise, Form 14's Directions and Comments for Use define "gross income" as including "salaries, wages, commissions, dividends, severance

pay, pensions, interest, trust income, annuities, partnership distributions, social security benefits, retirement benefits, workers' compensation benefits, unemployment compensation benefits, disability insurance benefits, veterans' disability benefits, and military allowances for subsistence and quarters."

■■■ Here, the trial court adopted the Form 14 submitted by Husband as part of its Amended Judgment, and found Husband's income to be $88,016 per year pursuant to Husband's testimony and Husband's 2006 W–2 admitted into evidence as Exhibit 8. Wife argues that Husband's 2006 W–2 showed his Medicare income to be $97,633.55. Wife testified that Husband's income had been about $95,000 per year or more, and asserts that these income figures should have been used by the trial court for Husband's income instead of $88,016. Wife's income calculation for Husband is dependent upon Husband's bonus and other discretionary benefits that exceeded Husband's salary. No evidence exists on the record demonstrating that the "other benefits and bonus" amount included in Husband's $97,633 income for 2006 will continue in the future. Husband argues that his income as determined by the trial court included his pre-tax income, although said calculation excluded such bonus items as the "Share Value Program," "Employee Incentive Plan," "Pride at Boeing–Tax Assist," and "Pride at Boeing Award." While it was within the trial court's discretion to consider a higher amount for Husband's wages as evidenced by Husband's W–2 and by Wife's testimony, the trial court also acted within its discretion to consider only Husband's gross income for 2006, without including unpredictable bonuses or other incentive payments. A trial court has discretion to disregard income history, and instead look to a single year's income figure if the court

finds that figure to be the most accurate predictor of a parent's income. *Samples v. Kouts,* 954 S.W.2d 593, 598 (Mo.App. W.D. 1997). Because there is evidence to support the trial court's calculation of child support based on Husband's income used on the Form 14, the trial court's judgment will be sustained.

Moreover, as we discussed in Wife's first point, we find sufficient evidence to support the trial court's decision to impute income to Wife and use $58,032 per year as Wife's income on the Form 14.

Point denied.

### III. Wife's Retirement Account Treated Unduly Unfavorable to Wife.

In her third point on appeal, Wife argues that the trial court's division of marital property is not fair and equitable because the trial court charged Wife with funds that she withdrew from her retirement account post-separation while, at the same time, the trial court did not charge Husband with the funds he withdrew from his investment account post-separation. Wife argues that both she and Husband withdrew funds from marital accounts to support themselves following their separation, and that the trial court abused its discretion in holding Wife accountable for the funds she withdrew. We agree.

■■■ A trial court "is vested with great flexibility in its division of marital property," and its division "need not be equal but must be fair and equitable given the circumstances of the case." *Dowell v. Dowell,* 203 S.W.3d 271, 276 (Mo.App. W.D.2006) (internal citation omitted). In reviewing a trial court's ruling on a division of property, we presume it is correct, and the party who challenges the division has the burden of overcoming that presumption. *Id.* An appellate court will interfere only where the division is so unduly favorable to one party that it constitutes

an abuse of discretion. *Poole v. Poole*, 977 S.W.2d 940, 944 (Mo.App. S.D.1998). The fact that one party is awarded a higher percentage of marital property is not itself an abuse of discretion. *Dowell*, 203 S.W.3d at 276.

The evidence gleaned from the record shows that Wife was unemployed for a period of time longer than she anticipated after she quit her job at Reuters. Wife quit her job because she was unable to balance the increased travel demands of her job with her parental responsibilities. There is no evidence to suggest that Wife dissipated the funds from her 401(k) for any reasons other than to support herself and her children during this period of unemployment. Wife argues that she should not be charged with cashing out her 401(k) to obtain funds to support herself, and compares her situation to that of Husband, who also withdrew funds from his Voluntary Investment Plan to pay down debt and for post-separation living expenses.[2]

 The trial court is given broad discretion in determining whether to include funds that previously have been spent by one of the parties in its division of marital property. *Ray v. Ray*, 877 S.W.2d 648, 650–51 (Mo.App. W.D.1994). When the trial court finds an unjustified withdrawal of marital funds, it is within its discretion to effect reimbursement thereof. *Bland v. Bland*, 652 S.W.2d 690, 692 (Mo.App. E.D. 1983).

 In its Amended Judgment, the trial court treated Wife's 401(k) plan in the amount of $6,251.54 as marital property that was equally divided between the parties. Likewise, the trial court equally divided by Qualified Domestic Relations Order Husband's Boeing Company Voluntary Investment Plan as of the date of the dissolution judgment. This ruling was consistent with the trial court's Amended Judgment, which divided all of the parties' investment accounts, 401(k) accounts, IRAs, pension plans and stock option equally between Husband and Wife. We are not to substitute our judgment for the trial court, which has the function of balancing the equities of the parties. *Slattery v. Slattery*, 185 S.W.3d 692, 696 (Mo.App. E.D.2006). However, the trial court provides no reason in its Amended Judgment as to why Wife's withdrawal of funds from her 401(k) plan should be treated any differently than Husband's withdrawal of funds from his 401(k) plan. The trial court makes no finding of credibility on the issue, and makes no finding that the funds withdrawn by Wife were not used consistent with her testimony. Furthermore, our review of the trial transcript provides no guidance or insight into the trial court's action transferring $3125 from Wife's cashed out 401(k) to Husband. We can only assume that the trial court considered Wife's action in cashing out her 401(k) as a squandering of marital assets. However, we must be guided by the evidence on the record, and not by assumptions or speculation. The trial testimony does not reveal any evidence that Wife's use of the withdrawn funds from her 401(k) was inappropriate or unjustified. The trial testimony does not reveal any evidence that Wife's use of the withdrawn funds from her 401(k) was any different than Husband's post-separation but pre-dissolution withdrawal of funds from his IRA. Given the lack of any findings in the Amended Judg-

---

**2.** While the evidence shows that Husband did not cash out his IRA, but borrowed from his IRA funds that are subject to repayment, we find this distinction irrelevant because the repayment of Husband's loan after the disso-

lution and property division will be made to his separate IRA, and not subject to a 50% division with Wife as are the current marital assets of the IRA.

ment or evidence to support the trial court's disparate treatment of the parties with regard to their withdrawal and use of marital funds, we find the trial court's order awarding Husband $3125 from Wife's 401(k) unduly unfavorable to Wife, and constitutes an abuse of discretion lacking the requisite evidentiary support.

Point granted.

## IV. Trial Court Committed No Error Not Awarding Retroactive Child Support.

In her fourth point, Wife argues that the trial court erred in failing to award her retroactive child support because Wife earned less than Husband following the separation and provided significant support for the child. Wife claims that the trial court abused its discretion in failing to award retroactive child support because she pleaded a request for retroactive child support in her Counter–Petition that was supported by evidence of both parties' support for Daughter during the separation and Husband's significantly higher income. Because Wife's argument is unsupported by the record, we cannot find in her favor.

▮ A trial court has discretion to order retroactive child support dating back to the filing of the petition for dissolution. Section 452.340.1. "It is the trial court's function to balance the equities in determining if a party is entitled to retroactive child support, and this Court will not substitute its judgment for that of the trial court." *Slattery,* 185 S.W.3d at 696. The trial court considers relevant factors of (1) the financial needs and resources of the child; (2) the financial resources and needs of the parents; (3) the standard of living the child would have enjoyed had the marriage not been dissolved; (4) the physical and emotional condition of the child, and the child's educational needs; (5) the child's physical and legal custody arrange-

ments, including the amount of time the child spends with each parent and the reasonable expenses associated with the custody or visitation arrangements; and (6) the reasonable work-related child care expenses of each parent. Section 452.240.1; *Slattery,* 185 S.W.3d at 696.

▮ The record reveals testimony from Husband that during the separation, he paid for 100% of Daughter's child care expenses, all of her clothing, school expenses, food expenses, field trips, extracurricular activities, sporting events, hair appointments, and her cell phone. Wife testified that she provided food and clothing for Daughter, and she paid for Daughter's bowling, cooking classes, slumber parties, and movie theater tickets. Wife testified that she received no child support from Husband since the separation. The trial court made a finding that the testimony of both parties was credible, such that "Husband paid for the majority of the child's expenses during the time the case was pending." Moreover, Wife did not at any time during the pendency of the case file a motion for temporary support. The trial court acknowledged that the parties equally divided their time with Daughter by alternating weeks. In light of these facts, we find that the trial court did not abuse its discretion in delaying child support one year following Husband's May 15, 2006 filing of his Petition for dissolution. Moreover, the trial court's Amended Judgment awarded child support effective May 1, 2007, which was retroactive from the August 30, 2007 date the Amended Judgment was entered, as well as the June 13, 2007 date on which the original judgment was entered. Accordingly, we find that the trial court did enter retroactive child support to Wife, and committed no error in not ordering the child support payments to be retroactive beyond May 1, 2007.

Point denied.

## V. Husband's Roth IRA Account Not Separate Property.

In her fifth and final point, Wife claims the trial court erred when it set aside $15,000 from Husband's Roth IRA with American Funds as his separate property. The trial court made a finding that $15,000 of Husband's current Roth IRA came from Husband's inheritance, and is Husband's separate property. Wife argues a lack of sufficient evidence to trace the funds used by Husband to open his Roth IRA account in 2000 to his 1994 inheritance, and claims that Husband opened the Roth IRA account in 2000 with funds from their joint savings.

Generally, when a spouse acquires property prior to a marriage and retains separate title to it after marriage, that property is deemed separate upon dissolution of the marriage. *Vinson v. Vinson*, 243 S.W.3d 418, 423 (Mo.App. E.D.2007). However, "[a]ll property acquired by either spouse subsequent to the marriage, and prior to a decree of legal separation or dissolution is presumed to be marital property regardless of whether title is held individually or jointly." *Kettler v. Kettler*, 884 S.W.2d 729, 731 (Mo.App. E.D.1994), *citing* Section 452.330.3. This presumption is overcome only by clear and convincing evidence that the acquired property was non-marital. *Id.*

"For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re Marriage of A.S.A.*, 931 S.W.2d 218, 222 (Mo.App. S.D.1996), *quoting In re Sedillo*, 84 N.M. 10, 498 P.2d 1353, 1355 (1972). However, there need not be one single event that "instantly tilts the scales." *Id.* The requirement of an extraordinary measure of proof is not inconsistent with our "substantial evidence" and "the weight of evidence," standard of review governed by Rule 73.01 and *Murphy v. Carron*, 536 S.W.2d at 30. *In re Estate of Dawes*, 891 S.W.2d 510, 522 (Mo.App. S.D.1994).

The trial court may be clearly convinced of the affirmative of a proposition even though it has contrary evidence before it. *In re Marriage of A.S.A.*, 931 S.W.2d at 222–23. Moreover, evidence in the record that might have supported a different conclusion does not necessarily demonstrate that the trial court's determination is against the weight of the evidence. *Id.* Thus, we give due regard to the trial court's opportunity to judge the credibility of witnesses. *Id.* Where there is conflicting evidence, we review the facts in the light most favorable to the judgment. *Id.*

Husband and Wife were married in 1995. Husband testified that he received a Fortis First Trust IRA paid to him in the amount of $15,266 as the death beneficiary upon the death of his step-mother in May 1994. Husband produced Exhibit 17, which included a death certificate, tax return, and probate documents from the attorney handling his step-mother's estate, and a letter from the attorney stating that Husband received the Fortis First Trust IRA paid to him as a death beneficiary totaling $15,266. Also included as part of Exhibit 17 were statements from a Roth IRA account held in Husband's name only with Fidelity Investments. One Fidelity statement showed transfer into the Roth IRA by check in the amount $11,341.73 on May 15, 2000. Husband testified that the funds deposited into the Roth IRA account in 2000 were in fact the same funds received from the inheritance, transferred from Fortis, to Stifel Nicolaus, and then to Fidelity Investments. Husband further testified that the account with Fidelity has

continued, and that some portion of it is now with American Funds so that the total is $30,000. Wife acknowledged that Husband had inherited some money from his step-mother, but Wife believed the $11,341.73 deposited into the IRA in 2000 came from the parties' savings. Neither Husband nor Wife presented any evidence other than their testimony that confirmed the source of the May 2000 deposit into the Fidelity Investment fund.

While we acknowledge our duty to review the facts in the light most favorable to the trial court's judgment, we are not persuaded by the evidence before us that Husband has overcome by clear and convincing evidence the presumption that his current Roth IRA account with American Funds, which was established by Husband during the marriage, was marital property.

The trial court found in its Amended Judgment that "Husband presented evidence to show he had an inheritance of $15,000 from his step-mother that he used to establish an IRA account, and the Court finds that the $15,000 portion of the IRA is Husband's separate property." From this finding, the trial court excluded $15,000 as Husband's separate property from Husband's current Roth IRA with American Funds, having a present value of $29,930.84, and divided the remaining marital portion of $14,930.84 equally between Husband and Wife. While there is evidence to support a finding that Husband received approximately $15,000 in 1994 as a portion of his inheritance, the record lacks substantial evidence allowing the trial court to conclude that Husband's current Roth IRA with American Funds consists of funds from Husband's inheritance. The trial court's finding is not supported by either Husband's testimony or the exhibits received into evidence. Given the Husband's elevated burden of overcoming the marital presumption by clear and convincing evidence, we find the trial court erred in concluding that any portion of Husband's Roth IRA with American Funds was separate non-marital property.

The evidence presented by Husband cannot meet the "clear and convincing" standard. Although the evidence before us clearly establishes that Husband inherited funds from his step-mother prior to the marriage, evidence in the record as to what happened to the inheritance is sparse, and does not support the trial court's finding. First, Husband testified that $11,341.73 of the inherited funds was transferred into the Roth IRA Fidelity account. Because this was the only evidence to come before the trial court regarding the funds used to open the Fidelity Investment account, then at most, the trial court could have found that $11,341.73 of Husband's current IRA was Husband's separate non-marital property.[3] Furthermore, Husband testified that he has no knowledge of what happened to the funds he obtained through inheritance between the time he received the funds in 1994 and the time he transferred funds into his Fidelity account six years later. Given this testimony, there is no evidence to support any finding that the entire $15,266, which Husband inherited, was used to fund Husband's IRA account.

A further review of the documents found within Exhibit 17, introduced into evidence by Husband, weighs even more heavily against the trial court's finding. The annual statements of Husband's Roth IRA with Fidelity Investments, which are part of Exhibit 17, show a steady decline in the investment value of the IRA from the ini-

---

**3.** Such a finding fails to consider the commingling of Husband's separate IRA funds in the same account, which the trial court also found to contain substantial marital funds. As neither party seeks to address this issue, we decline to do so.

tial transfer of $11,341.73 in May 2000 to a value of $6020.36 as of December 31, 2006. Husband first testified that some portion of the Roth IRA account with Fidelity was now with American Funds, and then, in summary fashion, testified that a portion of his current American Funds IRA account that was his separate property was $15,266, the amount of his inheritance. However, this testimony is unequivocally contradicted by Husband's own Exhibit 17, which does not support his testimony that $15,266 was ever paid into his Roth IRA with Fidelity, or that $15,266 from his inheritance can be traced to Husband's current Roth IRA account with American Funds. Even excluding Wife's testimony that Husband's IRA was funded with money from their marital bank savings account, we find that insufficient evidence exists to support the trial court's finding that $15,000 of Husband's IRA account is Husband's separate property. Husband's testimony not only lacked documentary support, but was contradicted by the documents admitted into evidence at trial. The trial court's finding that $15,000 of Husband's IRA with American Funds was Husband's separate property is not supported by clear and convincing evidence. Husband did not overcome the presumption that his current IRA account, which was established during his marriage to Wife, was marital property. Accordingly, the trial court erred in finding $15,000 of Husband's Roth IRA Fidelity account to be separate property. The $15,000 should be treated as marital property.

Point granted.

### Conclusion

The judgment of the trial court is affirmed in part and reversed in part. The case is remanded with instructions that the trial court review its Amended Judgment in light of Section 452.350 regarding income withholding. We reverse the trial court's order transferring $3125 to Husband from Wife's 401(k) account. We reverse the trial court's finding that Husband's Roth IRA contained separate nonmarital property. We remand this case with instructions to the trial court to recalculate the parties' Division of Property and Debts and to take such further action as is in accordance with this opinion.

GLENN A. NORTON, J. and PATRICIA L. COHEN, J., Concur.