

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| KEVIN PLAGER, | ) | ED99203 |
| | ) | |
| Appellant, | ) | |
| | ) | Appeal from the Circuit Court |
| vs. | ) | of St. Charles County |
| | ) | 1011-FC02987 |
| | ) | |
| TIFFANY PLAGER, | ) | Honorable Timothy A. Lohmar |
| | ) | |
| Respondent. | ) | Filed: March 18, 2014 |

## Introduction

Kevin Plager (Husband) appeals from the trial court's judgment dissolving his marriage to Tiffany Plager (Wife). On appeal, Husband raises several points challenging the distribution of marital property and debts, the child support award, and the retroactive child support award. We reverse and remand the child support award and the associated retroactive child support amount for the trial court to reconsider Husband's self-employment income in light of the Form 14 Directions. In all other respects, we affirm.

## Background

A brief summary of the facts follows. Additional facts will be addressed as needed throughout the analysis. The parties married in 2000, and two children were born

of the marriage. The parties separated in 2010, and Husband filed a petition for dissolution in August of 2010. Wife filed a counter petition for dissolution.

Following trial, the trial court dissolved the marriage. The court awarded Wife sole legal custody and both parties joint physical custody of the two children; ordered Husband to pay Wife the amount of $903 per month in child support, retroactive to the date he filed the petition for dissolution; and ordered the division of marital property and debts. This appeal follows.

## Discussion

## Point I

In his first point on appeal, Husband asserts that the trial court erred by failing to make written findings pursuant to his Rule 73.01[1] request. Husband reasserts this argument in various sub-points under Points II through VI. We address all six identical allegations here exclusively.

Rule 73.01(c) provides that "[t]he court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party. ... All fact issues upon which no specific finding are made shall be considered as having been found in accordance with the result reached." The provisions of Rule 73.01 are mandatory where a party properly requests findings of specific fact issues. Valentine v. Valentine, 400 S.W.3d 14, 20 (Mo. App. E.D. 2013). Nevertheless, the failure of a trial court to make such findings mandates reversal only when the trial court's failure to issue requested findings materially interferes with appellate review. Id. The appellate court will affirm if the record supports the judgment or if the court makes findings that substantially comply with a party's requests. Id. Here, the Judgment and its findings,

---

[1] All rule references are to the Missouri Rules of Civil Procedure (2013).

2

while not exemplary, are sufficient to allow for appellate review, and thus any alleged Rule 73.01 errors are not grounds for reversal.

Point denied.

## Points II - V

In Points II through V Husband challenges various aspects of the trial court's distribution of marital property and debt, arguing the court erred or abused its discretion in dividing the marital property and debt, in that the division was not equitable and was not supported by substantial evidence (Point II); failing to account for $1,000 Wife removed from the Plager Painting bank account (Point III); failing to determine whether Wife had dissipated $42,030.84 from the marital estate (Point IV); and dividing the marital debt, in that the division was not equitable and was not supported by substantial evidence (Point V).

### 1.    Standard of Review

The trial court has broad discretion in dividing marital property and debt. Coughlin v. Coughlin, 823 S.W.2d 73, 75 (Mo. App. E.D. 1991) (marital property); Donovan v. Donovan, 191 S.W.3d 702, 708 (Mo. App. W.D. 2006) (marital debt). This Court will only interfere with the trial court's distribution of marital property if the division is so heavily and unduly weighted in favor of one party that it amounts to an abuse of discretion. Slattery v. Slattery, 185 S.W.3d 692, 697-98 (Mo. App. E.D. 2006). We presume the trial court's division of property to be correct, and we require the party challenging the division on appeal to overcome that burden of presumption. Waite v. Waite, 21 S.W.3d 48, 51 (Mo. App. E.D. 2000).

3

2.    Division of Marital Property

In his second point on appeal, Husband argues the trial court abused its discretion in dividing the marital property, because the division was not equitable and was not supported by substantial evidence. We disagree.

In arriving at a just division of the marital property, the trial court should consider "all relevant factors." Section 452.330.1.[2] Some factors to be considered are the economic circumstances of each spouse, the contribution of each spouse to the acquisition of the marital property, the value of the nonmarital property, the conduct of the parties during the marriage, and the custodial arrangements for any minor children. Section 452.330.1(1)-(5). The trial court has broad discretion in dividing marital property, and the division need not be equal as long as it is fair and equitable under the circumstances. Neal v. Neal, 281 S.W.3d 330, 341 (Mo. App. E.D. 2009).

The court here awarded Husband marital assets of approximately $10,185 plus whatever amount was in his Plager Painting bank account,[3] which represented 22% of the marital asserts, and awarded Wife marital assets of approximately $36,007,[4] which represented the remaining 78% of the marital assets. Looking at the complete record, it does not appear that the trial court failed to consider or misapplied the Section 452.330.1 factors in making its distribution. See Slattery, 185 S.W.3d at 698.

The trial court explicitly stated that it had considered several of the relevant factors. First, the court noted the relatively equal earning power of each spouse. See Section 452.330.1(1). Second, as for the contribution of each spouse to the marital

---

[2] All statutory references are to RSMo. (2000), unless otherwise noted.

[3] While the exact value of Husband's Plager Painting account was unknown, the most recent bank statement presented at trial showed the account to have an approximate value of $1,296.

[4] Although Wife was named as the custodian of the children's Commerce Bank CDs, the $1,500 contained therein is the property of the children, not Wife.

4

property, the record revealed that Wife had contributed $44,000 of her nonmarital property as a down payment for the marital residence. See Section 452.330.1(2). The court noted that after the separation, Husband lived in the marital residence for approximately one year until the home was lost in foreclosure, during which time he made two mortgage payments. The parties' mortgage payments were $1,400 per month before the foreclosure. Despite Wife's nonmarital contribution to the marital residence, when the home was lost in foreclosure due to Husband's failure to make mortgage payments, the parties owed $17,919. The court was within its discretion to give Wife credit for her $44,000 contribution to the marital residence, which we find that it clearly did. See Neal, 281 S.W.3d at 341.

Third, the court explicitly considered each party's nonmarital property. See Section 452.330.1(3). The court noted Wife's nonmarital Roth IRA; however, it determined that her nonmarital Toyota Four Runner had been gifted to the estate and was now in the sole possession of Husband. Fourth, as for the conduct of the parties, the court found "there was no credible evidence of any history or pattern of domestic violence between the parties," but noted the marital residence was foreclosed upon after Husband failed to make regular payments despite living there. See Section 452.330.1(4).

Again, the division of marital property need not be an equal division, so long as it is fair and equitable under the circumstances. Neal, 281 S.W.3d at 341. Here, substantial evidence supported the trial court's distribution of assets. Most persuasively, it appears that Husband benefited substantially from Wife's nonmarital contributions to the marital estate both during the marriage and after the separation. The evidence showed Wife contributed substantial nonmarital funds to the marital residence and that Husband failed

to make regular mortgage payments after the parties' separation, despite living in the marital residence. But for Wife's nonmarital contribution, the parties' mortgage indebtedness following the foreclosure would have been substantially higher.

Moreover, Wife contributed both parties' vehicles to the marital estate. She gifted her nonmarital Toyota Four Runner to the marital estate, and the vehicle, valued at $4,000, was distributed to Husband in the dissolution. The record further showed that the vehicle Wife drove, a Toyota Highlander valued at $20,000, was actually purchased by Wife's mother and that Wife was repaying her mother for the vehicle at a rate of $150 per month.[5] In light of the parties' relative contributions to the marital estate and approximately equal future earning power, we see no abuse of discretion in the trial court's division of property.

Husband here has failed to overcome the presumption that the trial court's division of property was correct. See Waite, 21 S.W.3d at 51. Thus, any further discussion of the trial court's division of property would not be profitable. See Weant v. Weant, 622 S.W.2d 789, 790 (Mo. App. W.D. 1981) (*per curiam*) (trial court's decision regarding distribution of marital property is "so clearly within the trial court's discretion that no extensive discussion would be profitable").

3.    Division of Marital Debt

Also in his second point on appeal and again in his fifth point on appeal, Husband argues the trial court abused its discretion in dividing the marital debt, because the division was not equitable and was not supported by substantial evidence. We disagree.

---

[5] During oral arguments, Husband specifically attacked the inequity of the trial court's distribution of the Toyota Highlander; however, we note that at trial, Husband explicitly requested this vehicle be distributed to Wife.

6

As for the trial court's division of marital debts, Husband was assigned a Commerce Bank credit card in his name only and 60% of the $17,919 mortgage indebtedness following the foreclosure on the marital residence, for a total debt of approximately $20,751. Wife was assigned a separate Commerce Bank credit card in both parties' names, a First Bank credit card in her name only, a Bank of America World Points credit card in her name only, and 40% of the foreclosure indebtedness, for a total debt of approximately $11,850.

This Court will defer to the trial court's division of marital debts even if the evidence could support a different distribution. Donovan, 191 S.W.3d at 708. Here, Husband was assigned only the debt in his name and 60% of the foreclosure indebtedness. Again, the evidence showed that Husband lived in the marital residence for approximately one year, during which time he made only two mortgage payments, leading to the foreclosure that resulted in the indebtedness. Under these facts, we see no abuse of discretion in the court's allocation of debt. Id.

Points II and V assert identical arguments, and both are denied.

4.    Distribution of $1,000

In his third point on appeal, Husband argues the trial court's division of property was against the weight of the evidence, because it failed to account for $1,000 that Wife withdrew from the Plager Painting account. We disagree.

Both Husband and Wife agreed that she withdrew $1,000 from the Plager Painting business bank account in February of 2011. Husband testified that Wife was authorized to make withdrawals from the account and that he used the Plager Painting account for both business and personal expenses, including anything he purchased for the

7

children. Husband requested the court order Wife to refund $1,000 to the Plager Painting account.

Wife testified that she withdrew the $1,000 to cover expenses for the children. Husband agreed he did not pay "even $1" in child support or daycare expenses for the children, because it was Wife's decision to leave him and take the children. Although he wrote Wife one check of $516 for child support, he agreed he stopped payment on the check because he "felt that [he] didn't have to pay [child support]."

Moreover, we note that Husband testified that in or about August of 2011, he forged Wife's signature to cash an insurance check to both of them valued at $1,000 "out of spite," stating he had done so because "[s]he took money out of my account, so I just forged her name and took that money." The record sufficiently demonstrates that Husband had already been "reimbursed" for the money Wife had withdrawn from his account, and that Wife used the withdrawal to pay for expenses for the children because Husband was not paying child support. Thus, the trial court's distribution of property was not against the weight of the evidence.

Under these facts, Husband has failed to overcome this Court's presumption that the trial court's division of property was correct. See Waite, 21 S.W.3d at 51. Rather, these facts demonstrate that the trial court properly considered the conduct of the parties and the custodial arrangements for the minor children in its distribution of marital property. See Section 452.330.1(4)-(5). The trial court did not abuse its discretion in failing to distribute $1,000 to Husband to reimburse him for Wife's withdrawal from the Plager Painting account. See Coughlin, 823 S.W.2d at 75.

Point III is denied.

5.    Dissipation of Assets

In his fourth point on appeal, Husband argues the trial court abused its discretion in its division of property, because it failed to determine whether Wife had dissipated $42,030.84[6] from her Fidelity Roth IRA and to account for such dissipation in the division of property. We disagree.

The trial court has broad discretion to make determinations on issues relating to the dissipation or squandering of marital assets. Maurer v. Maurer, 383 S.W.3d 21, 29 (Mo. App. E.D. 2012). A spouse who uses marital funds to pay for ordinary living expenses during the divorce is not considered to have squandered assets. Dowell v. Dowell, 203 S.W.3d 271, 280 (Mo. App. W.D. 2006).

The evidence here does not demonstrate that Wife dissipated or squandered marital assets. Wife testified that in July of 2010, before the parties separated, she withdrew $10,000 from her Fidelity Roth IRA and used the money to pay for marital expenses. She further testified that between August of 2010 and October of 2011, she withdrew another $29,830 from the Fidelity account to pay for expenses for minor children. At trial, Wife submitted an itemized accounting of expenses she paid on behalf of the minor children ($22,406) and Husband ($6,828) during that same timeframe. The trial court was free to believe Wife's testimony in determining whether she dissipated or squandered marital assets. See Tate v. Tate, 920 S.W.2d 98, 103 (Mo. App. E.D. 1996). Wife's exhibits and testimony provided sufficient basis for the trial court to conclude her

---

[6] Husband asserts Wife withdrew $42,030.84 from her Fidelity Roth IRA account; however, without evidence before us on appeal supporting Husband's claim, we are unable to review the accuracy of his assertion. See Rule 81.12(a), (c) (appellant has burden to provide this Court with sufficient record to permit review of asserted claims of error). The only evidence in the appellate record of monies withdrawn from the account is Wife's Exhibit T-3, which shows withdrawals of $29,830 during the separation and $10,000 during the marriage. The trial court's judgment will be affirmed if the court's valuation of property is within the range of conflicting evidence presented at trial. Maurer v. Maurer, 383 S.W.3d 21, 29 (Mo. App. E.D. 2012).

withdrawals from the Fidelity Roth IRA were for necessary expenditures on behalf of the minor children and Husband.[7] The court did not abuse its discretion in failing to find Wife dissipated or squandered of marital assets.

Point IV is denied.

## Point VI

In his sixth point on appeal, Husband argues the trial court erred in calculating the child support award, because the court improperly calculated Husband's self-employment income. Specifically, Husband contends that the trial court erred in calculating child support because it misapplied the law when it calculated his gross income by considering only gross receipts without subtracting business expenses. We agree.

We will affirm the judgment of the trial court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Ruffino v. Ruffino, 400 S.W.3d 851, 854 (Mo. App. E.D. 2013).

In determining an award of child support, the trial court must first determine the presumed child support amount in accordance with the Form 14 worksheet and its Directions; and second, after considering all relevant factors, the trial court must determine whether to rebut the Form 14 amount as unjust or inappropriate. Section 452.340.7, RSMo. (Cum. Supp. 2011); Rule 88.01; Woolridge v. Woolridge, 915 S.W.2d 372, 379 (Mo. App. W.D. 1996). To calculate the Form 14 amount, the trial court can

---

[7] Additionally, Husband argues Wife was working and living rent-free with her mother during this time, so she would have been able to afford the stated $22,406 she paid for the children's expenses without withdrawing monies from her Fidelity Roth IRA account. We disagree. There was sufficient information in the record from which the trial court could have determined Wife was unable to meet both her own necessary expenses and the expenses for the minor children before she accepted a higher-paying job in May of 2011. We note that Wife withdrew only $2,000 after May of 2011. Upon this record, the trial court did not abuse its discretion in failing to find Wife dissipated or squandered marital assets.

accept the Form 14 submitted by either party or calculate its own. Woolridge, 915 S.W.2d at 379.

In the Judgment here, the trial court calculated its own Form 14 and ordered child support in the amount of $903 per month. The amount was based on gross income for Husband of $4,161 per month, gross income for Wife of $4,000 per month, a total adjusted child care cost of $628, a credit to Wife of $114 for health insurance costs for the minor children, and a visitation credit to Husband of $219. The trial court found this amount to be just and appropriate.

When determining the amount of child support to be paid, the application of Rule 88.01 and the Form 14 Directions is mandatory, and the trial court "must calculate the gross income of a self-employed parent as directed by this rule and form." DeArriba v. DeArriba, 100 S.W.3d 134, 140 (Mo. App. E.D. 2003). The Form 14 Directions provide that if a parent is self-employed, "gross income" for child support purposes is gross receipts minus the ordinary and necessary expenses incurred to produce such receipts. Mo. R. Civ. P. Form 14, Line 1, Direction. Comment I further clarifies that "[g]ross income from an unincorporated business is the net profit or net loss on the schedules filed as part of the parent's federal income tax return." However, the Comment recognizes that "payments by the business to pay for expenses of the parent that are personal in nature and not business related may be presumed income to the parent. Therefore, 'gross income' of the parent for purposes of computing the presumed child support amount may differ from the net profit or net loss of the business for income tax purposes." Mo. R. Civ. P. Form 14, Line 1, Direction, Comment I.

11

At trial, Husband submitted the bank statements for his Plager Painting account from January through December of 2011. Based on 2011 alone, he averaged his monthly deposits minus expenses for paint, supplies, and labor, to calculate a monthly average income of approximately $2,000 per month. For example, he testified that in January of 2011, he had total deposits of $2,700 minus labor costs of $1,250 to his employee Ken Stahle[8] and unspecified expenses for paint and supplies.[9] He testified that he "always ha[d] labor costs associated with the business each month," as reflected on his bank statements as checks to either part-time or full-time employees.

Similarly, Wife submitted the bank statements for Husband's Plager Painting bank account for all of 2009 and 2010, and for January through March of 2011 to the trial court. Wife agreed that Husband had monthly paint expenses averaging $162 in 2009, $107 in 2010, and $224 for the first three months in 2011. Although Wife argued that Husband did not declare labor expenses on his federal income taxes in 2009, Wife's submitted exhibits revealed that Husband wrote frequent checks to Ken or Kenneth or K. Stahle in 2009-2011. In accordance with Husband's testimony, we presume the checks written to Stahle were for labor costs.

Nevertheless, in determining Husband's income for purposes of child support, the trial court found the "best evidence of Husband's average monthly gross income was revealed by examination of Husband's monthly deposits into his [] Plager Painting

---

[8] Initially, we note that the quality of the exhibits in the record on appeal is very poor, making it difficult to read. We intend no disrespect if this Court has misspelled Mr. Stahle's name. Further, although Husband did not include Exhibit 12 in the record on appeal, Wife's exhibits on appeal include Exhibit GG, which is Husband's bank statements for January through March, 2011. From Exhibit GG, we can confirm that in January 2011, Husband wrote a check to Ken Stahle for the amount of $1,250.

[9] While Husband did not specify the exact cost of paint and supplies, Wife calculated his paint expenses in January of 2011 to be approximately $401 and submitted her calculation to the trial court in Respondent's Exhibit GG.

business bank account over the three-year period immediately preceding trial," and, accordingly, determined Husband's income to be $4,161.00 per month. The trial court's calculation of Husband's income was based on all deposits made into the Plager Painting account, but did not reflect the evidence presented at trial of Husband's painting expenses and labor costs, as was required.

Thus, the trial court here misapplied the law by considering only the monthly average of gross receipts and not subtracting the "ordinary and necessary expenses incurred to produce such receipts," as it was required to do under the Form 14 Directions. See DeArriba, 100 S.W.3d at 140 (reversing when trial court failed to consider ordinary and necessary expenses in determining self-employed parent's gross income); Harvey v. Harvey, 48 S.W.3d 674, 677 (Mo. App. E.D. 2001) (reversing when trial court calculated self-employed parent's gross income from expenditures rather than gross receipts less business expenses); see also Ruffino, 400 S.W.3d at 854. The trial court erred in calculating Husband's income on the Form 14.

Additionally, we note that although Husband in his Point Relied On asserts error in the trial court's failure to use the net profit or net loss shown on his tax returns in calculating his gross self-employment income, the record shows that Husband himself did not submit any of his tax returns as evidence to the trial court for it to consider. We find it ironic for Husband to complain now that the trial court erred in not considering his tax returns, when he failed to present any of his tax returns during the trial.

Moreover, the trial court's failure to base a self-employed parent's gross income on federal tax returns is not necessarily reversible error. While Comment I to the Form 14 Directions states that a self-employed parent's gross income "is the net profit or net

13

loss on the schedules filed as part of the parent's federal income tax return," the Comment itself recognizes that the federal tax return is not always the best approach to determine gross income for child support purposes. Mo. R. Civ. P. Form 14, Line 1, Direction, Comment I.

Such is the case here. Wife presented evidence to the trial court and on appeal of Husband's federal tax returns for 2007, 2008, and 2009, as well as his total business receipts for 2009, 2010, and part of 2011. Comment I presumes the accuracy of federal tax returns; however, our review of Husband's federal tax returns and total business deposits in 2009—the only year in which there was evidence of both—reveals substantially inconsistent numbers. Husband's stated gross receipts on his 2009 federal tax return were $27,152, but the total 2009 deposits into his business bank account was $56,814. It appears from the evidence presented at trial that Husband's 2009 federal tax return may not be accurate. We see no error in the trial court's failure to use the net profit or net loss shown in Husband's tax returns in determining the proper amount of child support.

Nevertheless, because the trial court miscalculated Husband's self-employment income, its calculation of the Form 14 was also incorrect. Point granted.

Point VII

In his seventh point on appeal, Husband argues the trial court abused its discretion and misapplied the law in awarding $17,157 in retroactive child support, because (1) the retroactive award was based on an incorrect calculation of his child support; and (2) the court failed to credit Husband for previous child support payments made during the pendency of the case. We agree in part and disagree in part.

14

The trial court has the discretion to make an award of child support retroactive to the date of filing, and we will not disturb that judgment absent an abuse of discretion. Section 452.340.1; Neal, 281 S.W.3d at 343. "It is the trial court's function to balance the equities in determining if a party is entitled to retroactive child support, and this Court will not substitute its judgment for that of the trial court." Id. (citation omitted). If the trial court determines a retroactive award is warranted, the paying party is entitled to receive a credit against the retroactive award for amounts paid on behalf of the minor child between the time of the separation and the time of the trial. Nelson v. Nelson, 25 S.W.3d 511, 524 (Mo. App. W.D. 2000).

Husband here first asserts error in the amount of the retroactive award based on the same argument made in Point VI. Because we found in Point VI that the trial court's calculation of Husband's income on the Form 14 misapplied the law, we must necessarily find the trial court's retroactive award based thereon was also in error, requiring reversal. Id. Thus, on remand, the trial court after determining the proper amount of child support, must determine the proper corresponding retroactive award.

Husband next argues the trial court's judgment was "silent" as to whether he received a credit for amounts paid on behalf of the minor children during the pendency of the trial. We disagree; rather, the record reveals that the trial court gave Husband a credit of $2,949.[10] Wife agreed that after the *pendente lite* order of April of 2012, Husband had made payments of $1,500, and he is entitled to a credit for those payments. See Runge v. Runge, 103 S.W.3d 804, 807-08 (Mo. App. E.D. 2003). Husband asserts on appeal he

[10] On July 3, 2012, the trial court ordered child support in the amount if $903 per month, retroactive to August 26, 2010, the date Husband filed the petition for dissolution. The retroactive award for the entire period of 22 months and eight days would have been approximately $20,106 (($903 x 22 = $19,866) + ([$903/30=$30] x 8 = $240) = $20,106); however, the court ordered a retroactive amount of $17,157, demonstrating a credit of $2,949.

15

made additional payments of $516; however, he specifically testified at trial that he stopped payment on this $516 check. Husband is not entitled to a credit for this amount. On appeal and below, Husband asserted he made various other payments, including daycare payments, on behalf of the minor children in the amount of $2,050, but the record does not show that Husband provided the court with evidence of payments made.[11] Further, we note that Husband alternatively testified at trial that he made daycare payments and he did not make any daycare payments. The trial court is not required to credit the non-custodial parent for unspecified amounts paid. Id. at 808. Thus, we do not find the trial court's credit of $2,949 amounted to an abuse of discretion. See Neal, 281 S.W.3d at 343.

Point granted in part and denied in part.

### Conclusion

The portion of the trial court's judgment awarding child support and retroactive child support is reversed. The cause is remanded for the trial court to conduct a further hearing for the purpose of calculating the proper child support amount and associated retroactive award. In all other aspects the judgment is affirmed.

Gary M. Gaertner, Jr., Judge

Robert M. Clayton III, C. J., concurs.
Karl A. W. DeMarce, S. J., concurs.

---

[11] While the transcript makes reference to an Exhibit 12, Husband did not include this Exhibit in the record on appeal, and likewise did not include any other evidence in the record on appeal that would indicate what specific evidence was before the trial court. Thus, Husband has failed to meet his burden to provide this Court with a record on appeal that is sufficient to permit us to review his claims of error. See Rule 81.12(a), (c); Sullins v. Sullins, --- S.W.3d ---, 2014 WL 260569, at *5 (Mo. App. E.D. 2014).