Marjorie Ann **GILLESPIE**, Appellant,

v.

Richard Allen **GILLESPIE**, Respondent.

No. 40451.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 20, 1979.

---

Gerald M. Poger, Mann & Poger, A. Thomas DeWoskin, Clayton, for appellant.

Clifford Schwartz, Shaw, Howlett & Schwartz, Clayton, for respondent.

DOWD, Presiding Judge.

This is an appeal from a decree of divorce granting custody of a four year old girl to her father. The child's mother, the appellant in this case, raises two points of alleged error both of which arise from the trial court's award of custody to the father.

The appellant initially claims that the trial court misapplied Missouri law in that: 1) the trial court did not give sufficient weight to evidence adduced under § 452.-375(4) and (5), RSMo 1977, 2) the trial court did not indulge the "tender years" presumption, and 3) the trial court did not apply the Missouri rule that frequent shuttling of a child between parents is not in the child's best interest.

The appellant contends in her second point that the custody decree is against the weight of the evidence.

In this court tried case, this court pursuant to Rule 73.01 will review the case both on the law and the evidence, due regard being given to the trial court's unique capacity to judge the candor or sincerity of the witnesses. *L. H. Y. v. J. M. Y.*, 535 S.W.2d 304, 305–306 (Mo.App.1976).

Marjorie and Richard Gillespie were wed in February, 1970. A girl, Stephanie, was born to the marriage in February of 1974. Appellant separated from her husband in May of 1977 and subsequently sought a divorce.

At the time of trial appellant was employed full-time as a secretary earning a gross income of $604 a month. She worked five days a week and occasionally on Saturday mornings. Appellant would leave the child at a nursery school during the day and return for her in the early evening after work. By agreement prior to divorce the father and mother divided custody of the child, the father having her on Wednesday, Thursday and Friday nights and the mother having custody on the remaining nights of the week. This arrangement was modified some months before the divorce action was filed to allow the mother to bowl on Tuesday nights. From the date of separation appellant lived with her parents in a one bedroom apartment. The appellant and her child slept on a sofa bed in the living room of the apartment. Appellant felt it was important for her daughter to have her own bedroom but had made only minimal efforts to obtain other accommodations for herself and the child. She stated that she had looked at several apartments but had made no definite plans for relocation in the near future. Appellant planned to use her share of the proceeds from the sale of the family residence to purchase new furniture, pay off a debt owed her parents and pay her attorney's fees.

Appellant would occasionally go to a discotheque on Friday nights and would go to a bar for a drink with her friends after bowling on Tuesday evenings. On these evenings the child would be left with her father.

There was some evidence that the child's maternal grandparents with whom she and her mother were living were experiencing marital difficulties.

Appellant was treated in 1970 for a nervous condition. She was prescribed valium and another medication for her stomach. At the time of trial she stated that she suffered from some shaking of the hands and that she would occasionally take a valium pill. She felt that this situation did not diminish her capacity to work and care for her child.

The respondent, the father, had been living with his mother and sister in a one bedroom house for two weeks prior to trial. When respondent had custody of the child, he would share a bed with the child in a dining room which had been converted into a bedroom. Occasionally the child would sleep with respondent's mother in her bed. Respondent testified that upon division of the marital property his share of the proceeds from the sale of the family residence would enable him to purchase another home where his daughter could keep her pets. He had visited several apartment houses with a view to renting one but had been turned away either because he had a child or pets or both.

Respondent had no regularly scheduled social activities, however, he testified that he did go out in the evening and had on one occasion been out all night leaving his daughter with his mother.

Respondent was employed, at the time of trial, in the field of telecommunications earning a gross income of $800 a month. He had worked at seven jobs during the past four years. Respondent stated that he was laid off due to work slow downs and was, in one instance, discharged from a job for insubordination.

The respondent was classified 4F by the military as unfit for service due to spondylosis and a personality problem. There was no further evidence presented at trial as to either difficulty other than respondent's testimony that his spinal disease had not affected his ability to work or care for his child.

Respondent testified that both he and appellant had bathed with their daughter. Both mother and father produced witnesses who testified as to their respective parenting abilities. Neither parent appeared to be a perfect parent but we do not believe such a person exists. It appears from the

record that both mother and father love the child and are anxious to provide her with the best care possible.

This is a close case. As such, appellant, in her first point, urges that the trial court should have indulged the tender years presumption thereby granting her custody of the child. It is appellant's position that under Missouri law the custody of a child of tender years should ordinarily be awarded to the mother particularly where the child is a girl. This principle is clearly recognized in Missouri, however, it is merely a rebuttable presumption and, therefore, not conclusive on the issue of child custody. *Pearson v. Pearson*, 575 S.W.2d 934, 935 (Mo.App.1978); *L. H. Y. v. J. M. Y.*, 535 S.W.2d 304, 307 (Mo.App.1976). The paramount concern of the court in determining custody of the child, and one which overrides all presumptions, is that the child be provided with the best environment possible during the formative years. *See, In Re Carmack*, 550 S.W.2d 815, 818 (Mo.App. 1977). The courts have not been unwilling to grant custody of young male and female children to the father in instances where the welfare of the child would be served by such an award. *J. A. F. v. P. J. F.*, 552 S.W.2d 739, 741 (Mo.App.1977); *M. L. v. M. R.*, 407 S.W.2d 600, 603 (Mo.App.1966).

Appellant complains that the trial court did not sufficiently consider evidence of the respondent's alleged mental and physical problems as required by § 452.-375(5), RSMo 1974. There was no evidence presented, however, to show that respondent suffered from any mental problems. And although the respondent admitted to having a spinal disease there was no evidence that this physical condition would impair his ability to care for his child.

We do not find in our review of the evidence that the trial court's decree placing custody of the little girl with the father was not in her best interest.

Appellant further submits, in her first point, that Missouri courts have held, as a matter of law, that frequent shuttling between parents is not in the best interests of the child. Appellant cites *J. G. W. v. J. L. S.*, 414 S.W.2d 352 (Mo.App.1967) as the sole support for this proposition. In that case the father had custody of the children during the week, the mother having custody on the weekends. The court, in eliminating the frequent custody shifts, was swayed by both parents' testimony that the children were experiencing anxiety and emotional stress incident to the frequent shifts. *J. G. W. v. J. R. S.*, supra at 359. It was apparent that the children in *J. G. W.* case were suffering emotionally, not necessarily from the change in environment, but from actions taken by both parents calculated to turn the children against the parent not having immediate custody. There was no evidence presented in the instant case to suggest that these parents engage in such psychological warfare. Nor is there any indication that the shifts in custody between appellant and respondent were disturbing to the child. In fact the split custody arrangement in the final decree was approximately the same as that devised by the parties prior to the divorce. Appellant's complaint appears in reality to be not that the split custody arrangement was disruptive to the child but that the respondent, and not appellant, was granted primary custody.

We do not believe that frequent custody shifts are contrary to the best interests of the child per se. In the absence of evidence that the arrangement upset the child we are loathe to deny either parent frequent contact with her. This is especially the case where neither parent has attempted to turn the child's affections away from the other and where neither parent has been shown to be unfit. *M. L. v. M. R.*, supra at 604.

All parts of appellant's first point are ruled against her.

The trial court awarded the father primary custody of the child. The mother was awarded temporary custody on the first, third, and fourth week of every month from 5:00 p. m. Friday until 5:00 p. m. on Monday. Appellant contends in her second point that this custody award is against the

weight of the evidence. We have carefully reviewed the evidence and find that the trial court gave due regard to the child's welfare and that the decree awarding custody of her to her father is not against the weight of the evidence. In a close case such as we are confronted with here we shall defer to the trial court's assessment of the evidence. It has the opportunity to observe the parties and is, therefore, the better judge of their character and credibility. *Pearson v. Pearson,* supra at 935.

Judgment affirmed.

CRIST and REINHARD, JJ., concur.