**Dayna ETHRIDGE, Respondent,**

v.

**Dwayne ETHRIDGE, Appellant.**

No. ED 89120.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 4, 2007.

Harold G. Johnson, St. Ann, MO, for appellant.

Dayna Ethridge, St. Louis, MO, pro se.

**OPINION**

GEORGE W. DRAPER III, Judge.

Dwayne Ethridge (hereinafter, "Father") appeals the trial court's judgment dissolving his marriage to Dayna Ethridge (hereinafter, "Mother"). Father raises three points on appeal, challenging the trial court's judgment with respect to child custody, the denial of maintenance, and failure to award him attorney's fees. We affirm in part, reverse and remand in part.

Mother and Father lived together in Indiana for many years prior to marrying on December 31, 1993. They had three sons, two of whom were born prior to the marriage. Father does not dispute the paternity of these children. The parties lived in Indiana for four years after getting married, then moved to St. Louis in May 1997.

At the time of the hearing, Mother testified she was employed at General Motors as an assembler working the second shift from 4:30 p.m. until 1:00 a.m. Mother earned approximately $27.00 to $28.00 per hour, received a pension, contributed to the 401K plan, and received excellent medical benefits that provide coverage for the whole family at no cost to her. Mother attempted to move to the first shift at the assembly plant; however, she did not have the requisite seniority at the time of trial to do so. Mother had been employed at General Motors for approximately seven years.

Father testified he was employed as a school bus driver for the St. Louis County Special School District earning approximately $1,193 per month. Father typically worked from 6:15 a.m. until 5:30 p.m., but these hours varied in the summer. Father further testified he suffered from a hip injury which would require him to undergo total hip replacement surgery. As a result of this condition, Father has an application pending for disability benefits and his physician authorized Father's procurement of permanent disabled license plates.

Mother and Father testified they shared child-rearing responsibilities in the home for the children. Mother testified she provided limited care for their children after school prior to going to work, but Father was usually home in the evenings with the boys. Father testified he helped with homework and spoke to all three sons with respect to behaving at school and doing their assignments.

There was extensive testimony from both parties and the emancipated son with respect to the difficulties all three children had in school. The emancipated son had earned only five credits during four years of high school and did not intend to return in the fall. The emancipated son testified he hoped to obtain a GED and then find employment. The record was replete with

references to many disciplinary problems the emancipated son had which resulted in several suspensions from school. Both Mother and Father testified they spoke to school counselors and administrators in an attempt to correct these issues. At the time of the hearing, Mother and Father acknowledged they are having similar problems with one of the younger sons.

The commissioner heard testimony regarding two incidents of alleged marital misconduct. First, Father testified he had a fourth child who was born in July 1994 after the parties were married. Father testified he did not file a joint tax return with Mother during their marriage in order to avoid having any potential tax refund garnished for his arrearages in child support owed to the fourth child who resided in Indiana. Father also admitted he failed to file a personal tax return since 2001, in an effort to avoid having his refund garnished by the State of Indiana.

Second, Mother and Father both testified about an altercation they had on September 5, 2005. Mother and Father were arguing about Mother's relationship with a female friend that Father believed was sexual in nature. Mother testified Father was intoxicated when the argument began and the children were home. As the arguing escalated, the parties "scuffled," and at some point Mother wrapped a telephone cord around Father's neck. The cord was removed eventually and the arguing continued as the parties moved through the house toward the kitchen. Mother testified Father "came at her" and brought up a cigarette toward her as if to burn her. Mother said she grabbed a knife out of the butcher's block and held it at her side. When she went to place the knife back on the counter, Father believed Mother was going to harm him, so he raised his hand and was cut as a result. Father did not seek medical attention, but the police were called to the home, and Mother was arrested.

Mother later pleaded guilty to one count of domestic assault in the second degree, a Class C felony, in connection with this incident. Mother received a suspended imposition of sentence, three years' probation, and was prohibited from contacting Father except with respect to custody exchanges. Both parties also admitted verbal and physical altercations occurred in front of their children.

The parties separated on October 11, 2005. Mother filed her petition for dissolution on November 29, 2005. Father filed a cross-petition for dissolution shortly thereafter. Both parties sought sole physical custody of their two youngest sons (hereinafter, "the Children"). The parties' oldest son was emancipated at the time of the dissolution hearing. Mother requested physical custody of the Children and wanted them to remain with her in the marital home. She testified the Children, age 11 and 13, were responsible enough to stay at home by themselves while she worked second shift. Mother stated she was able to call home at least three times per evening to check on the Children. Further, their emancipated son was living at home and testified he would be willing to help care for the Children while Mother was at work. Father testified that despite currently living with his mother, he would obtain independent housing if he was granted sole physical custody of the Children. Father further stated he would be home after school and in the evenings to care for the Children and help with homework.

While the case was pending, Mother testified Father failed to pick up the Children approximately thirty-nine times for his temporary visitation which occurred in the evenings while Mother was at work. Father disputes this claim and testified he

attempted to pick up the Children after school on several occasions, but they would not answer the door or the phone when he arrived. Father would call Mother and Mother would tell him she would send them out of the house. Sometimes the Children did not emerge from the home. Other times the Children would be sent to Mother's uncle or were off playing with friends during Father's scheduled visitation time.

The guardian ad litem (hereinafter, "the GAL") recommended joint legal custody. However, if the trial court felt inclined to award sole legal custody, the GAL suggested it should rest with Father because he seemed more willing to share information with Mother.

With respect to physical custody, the GAL recognized the parties had some issues with custody exchanges and "a few of the bombshells dropped" regarding issues of domestic violence. Despite these issues, the GAL recommended the parties should share a "50–50 custody plan." The GAL suggested two alternatives to the commissioner. First, she offered to devise a plan where Father had custody of the Children during the week and Mother had custody for most weekends. However, in light of the issues with exchanging custody and no real preference that the Children spend the entire week with Father, the GAL proposed a second option. The second option entailed Mother having custody on Monday and Tuesday, Father having custody on Wednesday and Thursday, with the parties alternating weekends. The parties would follow a standard holiday schedule and be provided a continuous block of custody for a period of time in the summer for vacation purposes.

After hearing all of the testimony and reviewing the exhibits, the commissioner issued her findings of fact and conclusions of law which were adopted as the judgment by the trial court. The trial court did not award maintenance to either party, stating "the parties have made no claim for maintenance from the other." The trial court divided the marital property and debt, awarding the marital home to Mother.[1] The trial court determined both parties engaged in marital misconduct, citing Mother's assault on Father and Father's "sexual relationship with a woman who was not his wife during the marriage resulting in the birth of a child." No attorneys' fees were awarded to either party.

With respect to the child custody issues, the trial court adopted the GAL's second recommendation with respect to joint physical custody of the Children that resulted in an alternating custody arrangement during the week. The trial court found joint legal custody was inappropriate because the parties were unable to discuss issues that related to the Children. The trial court awarded Father sole legal custody of the Children. Finally, the trial court ordered Mother to pay Father $1,000 per month for child support of the Children.[2] Father now appeals.[3]

1. The property division is not contested by either party on appeal and will not be discussed in detail.

2. The Form 14s submitted by the parties were found inaccurate, and the trial court prepared its own Form 14. The trial court determined the application of the authorized support guidelines would be unjust or inappropriate. This issue is not contested by either party on appeal.

3. Mother did not file a respondent's brief in this case. "While no penalty is prescribed for failure to file a brief, we are required to decide the case without the benefit of that party's authorities and points of view." *Reynolds v. Reynolds*, 163 S.W.3d 567, 570 n. 1 (Mo.App. E.D.2005).

This Court reviews a judgment of dissolution in the same manner as we review any court-tried case. *Wood v. Wood*, 193 S.W.3d 307, 310 (Mo.App. E.D.2006). The judgment must be affirmed unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id., citing Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will not retry the case, but rather, accept as true the evidence and reasonable inferences therefrom in the light most favorable to the trial court's judgment, and disregard all evidence and inferences to the contrary. *Slattery v. Slattery*, 185 S.W.3d 692, 696 (Mo.App. E.D.2006). "This Court defers to the superior ability of the trial court to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles not revealed in the transcript." *Id.*

In his first point on appeal, Father claims the trial court erred in awarding the parties joint physical custody with multiple weekly exchanges of the Children. Father argues such an arrangement is not in the best interests of the Children in that neither parent wants any form of joint custody, there is animosity, very little cooperation between the parties, and the constant custody exchanges are detrimental to the Children's sense of stability.

"With respect to child custody and visitation issues, the trial court has broad discretion, and we give even greater deference to these decisions than in other civil cases." *Dunkle v. Dunkle*, 158 S.W.3d 823, 833 (Mo.App. E.D.2005). We will not reweigh the evidence, even if the evidence could have supported another conclusion. *St. Lawrence v. St. Lawrence*, 109 S.W.3d 225, 226 (Mo.App. E.D.2003). We must presume the trial court awarded custody in accordance with the children's best interests after reviewing all of the evidence, and we will reverse this decision only if we are convinced firmly the welfare and best interests of the children require otherwise. *Malawey v. Malawey*, 137 S.W.3d 518, 522 (Mo.App. E.D.2004).

First, Father focuses on his belief that the frequency of the exchanges between the parties is not in the Children's best interest. Father provided this Court with several citations to other cases where frequent custody exchanges or "shuttles" were found to be detrimental to the children involved. *See Wood v. Wood*, 400 S.W.2d 431 (Mo.App.St.L.Dist.1966); *In re Marriage of Powers*, 527 S.W.2d 949 (Mo.App.St.L.Dist.1975); *Bashore v. Bashore*, 685 S.W.2d 579 (Mo.App. W.D.1985); and *Brisco v. Brisco*, 713 S.W.2d 586 (Mo.App. W.D.1986). Father's reliance on these cases is misplaced.

Here, the trial court ordered a joint physical custody arrangement that was endorsed by the GAL which alternated physical custody between Mother and Father during the week and on weekends. While the record reflected there were some issues with the exchanges while the dissolution action was pending, both parties testified they had engaged in the exchanges for several months leading up to the trial with little incident. Father's brief makes conclusory statements that it would be better for the Children to reside with one parent during the week to serve as a stabilizing factor in the Children's lives. Father has failed to present this Court with any evidence, nor does the record reflect any evidence, which demonstrates the current custody arrangement is not working or causing the Children to suffer. Father's conclusory statements, without more, are insufficient to overturn the trial court's determination of custody.

Second, Father argues neither party requested joint physical custody and neither parent is committed to a joint custody plan

requiring frequent exchanges. To support his argument, Father claims the parties are not able to cooperate, there is animosity between them, and there are restrictions on their contact as a result of the terms of Mother's probation due to the domestic assault conviction. Again, Father cites us to several cases where this Court set aside joint custody awards when it was shown the parties were unable to cooperate and communicate with each other effectively.

While we recognize the parties had an acrimonious relationship at the end of their marriage, both parties testified they wanted the other to have as much contact with the Children as possible. The commissioner also heard evidence that despite initial problems with the custody exchanges, the parties indicated the exchanges were going more smoothly in the final months leading up to the dissolution hearing. The ability of the parties to set aside their animosity toward each other and comply with temporary custody exchanges prior to the dissolution supports an award of joint custody. *See In re Marriage of Dempster,* 809 S.W.2d 450, 455 (Mo.App. S.D.1991)(affirming frequent custodial exchanges where the record was "replete with instances of verbal and physical brawls of the parties," yet "they nonetheless complied with the pendente lite order during the five months preceding trial"). Moreover, we have found frequent custody exchanges were permissible, even in the face of animosity among the parents when neither parent was engaging in "psychological warfare" with the children as the victims. *See Gillespie v. Gillespie,* 590 S.W.2d 420, 423 (Mo.App. E.D.1979)(upholding frequent custody exchanges in "close case" where "neither parent has attempted to turn the child's affections away from the other and where neither parent has been shown to be unfit").

"Where parents live apart, there is no way to provide for joint physical custody other than by transferring children from one parent to another at designated times. If there is to be frequent and continuing contact with both parents as specified in Section 452.375.1(2), transfers are inevitable." *Dempster,* 809 S.W.2d at 457 (internal quotations omitted). Based upon our review of the record, we cannot say the frequent custody shifts were contrary to the best interests of the Children per se. "In the absence of evidence that the arrangement upset the [Children], we are loathe to deny either parent frequent contact." *Gillespie,* 590 S.W.2d at 423. Point denied.

■ In his second point, Father argues the trial court erred in denying his request for maintenance. Father argues the trial court's judgment which stated, "The parties have made no claim for maintenance from each other" was not supported by the record and the trial court's ultimate ruling that "[n]either party is awarded maintenance from the other party" is erroneous based upon the pleadings. Further, Father argues he qualified for an award of maintenance pursuant to Section 452.335.1(1)(2) RSMo (2000).[4]

The record clearly demonstrates both Mother and Father made initial requests for maintenance from the other party. In Mother's petition for dissolution, Mother requested "an order be made concerning the support and maintenance of [Mother]." Mother repeats this request in her subsequent amended pleadings. At trial, however, Mother testified she could support herself without any assistance from Father and was not asking the trial court to award her any maintenance. Mother's attorney

---

4. All statutory references are to RSMo (2000) unless otherwise indicated.

asked, "You're aware, are you not, [Mother], that if you do not request maintenance today, you will be forever barred from coming to this or any other courts to seek maintenance from [Father] for yourself," to which Mother answered, "Yes."

Father's cross-petition for dissolution avers, "[Mother] is employed earning a substantial income sufficient to enable her to provide maintenance for [Father], to pay child support and to pay his attorney fees" and requested "[Mother] pay a reasonable sum for child support and maintenance for [Father] and his attorney fees...." Father offered no testimony with respect to his request for maintenance. At the conclusion of Father's testimony, his counsel offered two exhibits into evidence: Father's pending application for disability benefits and the paperwork granting him use of disabled license plates. Mother's counsel objected, stating, "I don't know what—what their relevant for. He's not on disability; he's working. So I don't know what the relevance of that is for, so I object to that." Father's counsel responded, "Your Honor, the relevancy is that if my client goes on disability, we're asking for maintenance. And we have not waived the claim for maintenance, and that is relevant to that, to the medical condition...." The commissioner overruled Mother's objection and allowed the exhibits to come into evidence.

The party requesting spousal maintenance must demonstrate need before a trial court can enter such an award. *Shelton v. Shelton*, 29 S.W.3d 400, 404 (Mo.App. E.D.2000). "An award of maintenance must be made within a reasonable tolerance of proof, and it cannot stand without evidence to support it." *Id.* A mere request for maintenance, however, is insufficient to demonstrate need to support a maintenance award. *Carpenter v. Car-*

*penter*, 935 S.W.2d 89, 92 (Mo.App. E.D. 1996).

Father did not offer any testimony with respect to his reasonable needs. Father did testify he lived with his mother and had health issues which prompted him to file for disability benefits. While the transcript reflects some lists of personal property and debts that were admitted into evidence, neither Father nor Mother offered a *Statement of Income and Expenses* into the record. Both parties completed a Form 14; however, the trial court determined both forms were inaccurate and rejected them.

Thus, the record before us is insufficient to determine whether Father has met his burden of demonstrating need. Further, the trial court did not make any findings with respect to whether Father could meet his reasonable needs without maintenance based upon the mistaken belief neither party was requesting maintenance from the other. Accordingly, we cannot determine whether the trial court abused its discretion in failing to award Father maintenance. Father's second point is granted to the extent we reverse and remand to the trial court for further proceedings regarding maintenance. *See Shelton*, 29 S.W.3d at 405 (reversing and remanding award of maintenance for reconsideration when record contained minimal testimony regarding spouse's current expenses and statement of income and expenses was not admitted into evidence); *Waite v. Waite*, 21 S.W.3d 48, 53 (Mo.App. E.D.2000)(reversing and remanding for reconsideration because spouse produced "small amount of evidence" regarding her reasonable needs and failed to admit statement of income and expenses into the record); *Chen v. Li*, 986 S.W.2d 927, 935 (Mo.App. E.D. 1999)(same).

In his final point, Father argues the trial court erred in failing to award

him attorney's fees because he was entitled to a reasonable sum pursuant to Section 452.355.1. Father argues Mother has a greater ability to pay attorney's fees, his cross-petition for custody of the Children was meritorious, and he presented his misconduct during the marriage in a forthright fashion.

Generally speaking, parties to a domestic relations case are responsible for paying their own attorney's fees. *Kinner v. Scott*, 216 S.W.3d 715, 721 (Mo.App. S.D.2007). A trial court may, however, award attorney's fees pursuant to Section 452.355.1 after considering "all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action." We review the trial court's decision to award attorney's fees for an abuse of discretion. *Russell v. Russell*, 210 S.W.3d 191, 199 (Mo. banc 2007). An abuse of discretion occurs where the trial court's award was so arbitrary and unreasonable and against the logic of the circumstances as to shock the sense of justice and indicate that the trial court did not carefully consider its decision. *Schindler v. Schindler*, 209 S.W.3d 35, 40 (Mo.App. E.D.2006). "The party requesting an award of attorney fees in a dissolution action has the burden of proving his or her entitlement to such an award." *Davis v. Schmidt*, 210 S.W.3d 494, 512 (Mo.App. W.D.2007).

"While a spouse's inability to pay is not required to support an award of attorney's fees, the award must consider the financial position of each spouse." *Mitalovich v. Toomey*, 206 S.W.3d 361, 368 (Mo.App. E.D.2006). Here, there was evidence of a significant discrepancy in the amount of money Mother earned and the amount Father earned. Moreover, due to Mother's considerably higher income, she has a greater ability to pay attorney's fees.

*See Russell*, 210 S.W.3d at 199. "However, the fact that one party earns more than the other, standing alone, does not compel an award of attorney fees." *Scott v. Scott*, 144 S.W.3d 921, 923 (Mo.App. S.D.2004).

The trial court is also permitted to consider a spouse's conduct during the marriage in determining whether an award of attorney's fees is appropriate. *Russum v. Russum*, 214 S.W.3d 376, 386 (Mo.App. W.D.2007). Here, there was copious evidence of the parties' marital misconduct, including Mother's physical assault on Father, verbal and physical confrontations between the parties, and Father's fourth child born out of wedlock. Further, the trial court found the parties were "less than forthright" with respect to legal issues related to the licensing of their vehicles, financial information provided to the Children's school that made them eligible for free meals, and Father's failure to file income tax returns in order to avoid his child support obligations. In light of this evidence, we find the trial court did not abuse its discretion in denying Father an award of attorneys' fees. Point denied.

The trial court's judgment is reversed and remanded for reconsideration with respect to the trial court's failure to award Father maintenance. In all other respects, the trial court's judgment is affirmed.

MARY K. HOFF, P.J., and SHERRI B. SULLIVAN, J., concur.