**Christine VALENTINE, Respondent,**

v.

**Jody VALENTINE, Appellant.**

**No. ED 98167.**

Missouri Court of Appeals,
Eastern District,
Division Five.

April 16, 2013.

Lisa Adams, St. Louis, MO, for appellant.

Christopher T. Risler, Clayton, MO, for respondent.

ROBERT M. CLAYTON III, Judge.

Jody Valentine ("Husband") appeals from the trial court's judgment dissolving his marriage to Christine Valentine ("Wife"). Husband raises eleven points of error on appeal concerning the award of maintenance, the distribution of marital and nonmarital property, the trial court's finding that he dissipated certain marital funds, the award of custody, the determination of residential parent, the award of child support, and the grant of Wife's attorney's fees. We reverse and remand the maintenance award for the trial court to consider Wife's ability to meet her reasonable needs in light of her portion of the marital assets. In all other respects, we affirm.

## I. BACKGROUND

The parties married in 1999, and two children were born of the marriage. The parties separated in December 2008, and Wife filed a petition for dissolution in January 2010.

Following trial, the trial court dissolved the marriage. The court ordered Husband to pay Wife $1,100 per month for modifiable maintenance, awarded the parties joint legal and physical custody of the two children, ordered Husband to pay Wife the amount of $1,401 per month in child support, set aside to Husband $33,000 in separate property for his non-marital contribution to his retirement accounts, ordered the division of marital property and debts, and ordered Husband to pay $10,000 towards Wife's attorney's fees. This appeal follows.

## II. DISCUSSION

### A. Rule 73.01 Findings

In his first point on appeal, Husband asserts that the trial court erred by failing to make written findings pursuant to his Rule 73.01 [1] request. Husband reasserts this argument in various sub-points under points three, eight, and ten. We address all four identical allegations here exclusively.

Rule 73.01(c) states that "[t]he court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party.... All fact issues upon which no specific finding are made shall be considered as having been found in accordance with the result reached." The provisions of Rule 73.01 are mandatory where a party properly requests findings of specific fact issues. *Lattier v. Lattier*, 857 S.W.2d 548, 549 (Mo.App. E.D.1993). However, the failure of a trial court to make such findings mandates reversal only when the trial court's failure to issue requested findings materially interferes with appellate review. *Id.* If the record supports the judgment or if the court makes findings that substantially comply with a party's requests, the appellate court will affirm. *Cohen v. Cohen*, 178 S.W.3d 656, 662 (Mo.App. W.D. 2005). Here, the Judgment and its findings are sufficient to allow for appellate review, and thus any alleged Rule 73.01 errors are not grounds for reversal. Point one on appeal is denied.

### B. Maintenance

In points two and three, Husband challenges the trial court's award of maintenance. Appellate courts must affirm the award of maintenance unless there is no substantial evidence to support it. *Linton v. Linton*, 117 S.W.3d 198, 205 (Mo.App. S.D.2003). The trial court has considerable discretion in determining a maintenance award, and to succeed on appeal, the appellant must show an abuse of that discretion. *Ferry v. Ferry*, 327 S.W.3d 599, 602 (Mo.App. E.D.2010).

#### 1. Wife's Reasonable Needs

In point two, Husband challenges the trial court's award of maintenance asserting the court did not determine Wife's reasonable needs in light of the marital property awarded her and her appropriate employment. We agree.

In a proceeding for dissolution of marriage, a court may award maintenance to a spouse "only if it finds the spouse seeking maintenance: (1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) Is unable to support himself through appropriate employ-

---

1. All rule references are to the Missouri Rules of Civil Procedure (2012).

ment...." Section 452.335.1.[2] Maintenance is limited to the needs of the recipient. *Schubert v. Schubert*, 366 S.W.3d 55, 64 (Mo.App. E.D.2012).

Here, Wife testified at trial that she anticipated monthly expenses equaling $3,999.[3] The court calculated her reasonable monthly expenses to be approximately $3,800. While the trial court did not specify the basis for its calculation of Wife's reasonable expenses, our review of the record shows that number is consistent with the evidence. *See Cohen*, 178 S.W.3d at 662. First, Wife testified these expenses were incurred solely for herself, with the exception of the $78 gym membership, which also covered the children. Because expenses on behalf of the parties' children are not included in the maintenance calculation, it appears the trial court properly credited her for only half of the gym membership cost. *See Schubert*, 366 S.W.3d at 64. Second, Wife testified that in an effort to downsize her expenses in the future, she would not maintain her housekeeping expenses of $160 per month. It appears the trial court did not find housekeeping a necessary expense. Subtracting these two amounts from the $3,999 asserted by Wife at trial, the record supports the court's finding of reasonable monthly expenses of approximately $3,800. *See Lattier*, 857 S.W.2d at 549; *Cohen*, 178 S.W.3d at 662.

After determining a spouse's reasonable needs, the court next considers whether the spouse lacks sufficient property, including marital property apportioned to her, to provide for these reasonable needs, or is unable to support herself though appropriate employment. Section 452.335.1. Husband asserts here that Wife was awarded sufficient marital property to meet her needs and the trial court erred in failing to consider whether the marital property awarded her was income producing.

At trial, Wife testified she received a monthly net income of $2,654 and anticipated an approximate 2.3 percent raise. Accordingly, the court determined that Wife's net income was $2,700 per month. Based on Wife's income and reasonable needs, the court concluded she "had a shortfall" of approximately $1,100 per month and required maintenance. On these facts, the court ordered maintenance in the amount of $1,100 per month.

Although the trial court stated it determined the maintenance award "pursuant to Section 453.335," we find that the court failed to consider fully whether Wife could provide for her needs through use of property, including the marital property apportioned her in the dissolution. The court awarded Wife $282,540 in marital assets, including $260,500 in marital and nonmarital IRAs and retirement accounts. While a spouse is not required to deplete or consume his or her portion of the marital assets before being entitled to maintenance, a court must consider whether the spouse can earn income from his or her share of the marital property. *Schubert*, 366 S.W.3d at 64–65. "Failure to consider

---

**2.** All statutory references are to RSMo (2000), unless otherwise noted.

**3.** Specifically, Wife testified she anticipated monthly expenses of $1,200 for rent, $280 for utilities, $687 for automobile expenses including gas, oil, maintenance, taxes & registration, and auto loan payments, $207 for automobile insurance, $250 for groceries for herself only, $200 for clothing for herself, $80

for prescription medications, $350 for recreation for herself only, $150 for beauty shop expenses, $150 for a babysitter, $125 for pet care, $45 for manicures, $30 for car washes, $7 for satellite radio, and $78 for the gym for herself and the children. We note that Wife listed additional expenses in her Statement of Income and Expenses; however, she did not request them at trial.

the recipient spouse's reasonable expectation of income from investment of the marital property constitutes error." *Id.* at 65 (quoting *Breihan v. Breihan,* 73 S.W.3d 771, 777–78 (Mo.App. E.D.2002)). The trial court may, after consideration, include or exclude income attributable to retirement and IRA accounts awarded as marital property in the calculation of maintenance; however, the court must first consider such income. *Hill v. Hill,* 53 S.W.3d 114, 116 (Mo. banc 2001). Point two on appeal is granted. We reverse and remand for the court to consider Wife's ability to meet her reasonable needs in light of her portion of the marital assets.

## 2. Husband's Ability to Pay

In point three, Husband challenges the trial court's award of maintenance, asserting the court did not consider his ability to pay maintenance in light of the child support award.[4] Specifically, he asserts the trial court incorrectly calculated his income, failed to consider the child support payments Wife will receive, and did not consider his ability to pay. We disagree.

Once the court determines a spouse is entitled to maintenance, the court shall order an amount it deems just, after considering all relevant factors, such as: (1) the financial resources of the party seeking maintenance, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian; (2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; (3) the comparative earning capacity of each spouse; (4) the standard of living established during the marriage; (5) the marital and non-marital property apportioned to each party

in the dissolution; (6) the duration of the marriage; (7) the age and physical condition of the spouse seeking maintenance; (8) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; (9) the conduct of the parties during the marriage; and (10) any other relevant factors. Section 452.335.2(1)-(10). Again, the trial court has considerable discretion in determining the amount of the maintenance award. *Ferry,* 327 S.W.3d at 602.

In the Judgment, the trial court noted the financial resources of each party, the "equal[ ]" apportionment of marital assets and obligations, the comparative education levels and earning capacity of each spouse, the 9–year duration of the marriage, the age and health of the parties, and the conduct of the parties during the marriage. Section 452.335.2. While the trial court did not specifically analyze Husband's ability to meet his needs while paying maintenance, the court noted Husband earns a gross income of at least $137,500 per year, while Wife earns a gross income of $51,200 per year. Based on these facts, the court found Husband "earns sufficient income to afford him to pay Wife maintenance while at the same time meet his own needs."

Husband first challenges the court's inclusion of bonus income in determining his income. Husband's base income was $125,760. The evidence showed that Husband had received a cash bonus averaging $22,626 every year he had worked at Anheuser–Busch InBev. The court is entitled to consider prior and anticipated earnings in determining earning potential. *Balven v. Balven,* 734 S.W.2d 909, 914 (Mo.App. E.D.1987). We find the

---

4. Husband also reasserts his Rule 73.01 argument, which we have already addressed in point one.

court did not abuse its discretion in including an approximate $12,000 bonus in its calculation of Husband's income. *See Ferry,* 327 S.W.3d at 602.

▮ Husband next challenges the court's failure to consider the $1,400 Wife received for child support in calculating the maintenance award. Wife's statement of income and expenses indicated that her monthly expenses on behalf of the children were $1,485; however, the judgment awarded Wife only $1,400 per month for child support. It is plain that the child support payments will be unavailable for Wife's own needs, thus the trial court did not err in not considering child support received as part of Wife's financial resources. *Cf. Bryant v. Bryant,* 218 S.W.3d 565, 570 (Mo.App. E.D.2007) (trial court erred in considering foster-care payments wife received but that were unavailable for her own needs).

▮ Last, Husband challenges the court's failure to calculate his reasonable monthly expenses and monthly net income before calculating the maintenance award. Our review of the record supports the trial court's finding that Husband had the ability "to meet his needs while meeting those of the spouse seeking maintenance." Section 452.335.2(8). The trial court properly calculated Husband's gross income as $11,480 per month. Husband's pay stub submitted at trial demonstrated that his net income was $7,350 per month,[5] not including the income from his annual bonus. Husband's statement of income and expenses declared monthly expenses of $6,815 on his behalf alone. However, we note that $2,745 of these expenses was incurred on behalf of the marital resi-

dence, which Husband testified he planned to sell. Wife testified the going rate to lease a three-bedroom home in the children's school district was $1,200 per month. The trial court evidently found Husband's reasonable needs could be met with less expensive housing. *See Lindsey v. Lindsey,* 336 S.W.3d 487, 498–99 (Mo. App. E.D.2011) (court may reduce stated reasonable expenses based on parties' testimony); *cf. Handy v. Handy,* 338 S.W.3d 852, 860 (Mo.App. W.D.2011) (no error for trial court to assume husband's reasonable expenses could be met with less expensive housing when court ordered husband to sell marital residence).

▮ Unless the maintenance amount is patently unwarranted or wholly beyond the means of the paying spouse, this Court will not interfere with the trial court's award of maintenance. *Linton,* 117 S.W.3d at 205. Here, the trial court's finding that Husband could provide for his reasonable expenses while paying maintenance does not shock our sense of justice. Point three on appeal is denied.

## C. Distribution of Property

In points four through six Husband challenges various aspects of the trial court's distribution of separate and marital property.

### 1. Standard of Review

▮ The trial court has broad discretion in dividing marital property. *Coughlin v. Coughlin,* 823 S.W.2d 73, 75 (Mo.App. E.D.1991). We will interfere with the trial court's distribution of marital property only if the division is so heavily and unduly weighted in favor of one party

---

**5.** Husband's pay stub demonstrated monthly deductions of $2,964 for taxes and fees, $412 for insurance, $629 for his 401(k), and $125 for his health care Flexible Spending Account ("FSA"). We did not include among the de-

ductions the $417 per month deducted for his dependent care FSA, because the child support amount is predicated on the assumption that Wife, not Husband, is responsible for child care payments.

that it amounts to an abuse of discretion. *Slattery v. Slattery,* 185 S.W.3d 692, 697–98 (Mo.App. E.D.2006). We therefore presume the trial court's division of property to be correct, and require the party challenging the division on appeal to overcome that burden of presumption. *Waite v. Waite,* 21 S.W.3d 48, 51 (Mo.App. E.D. 2000).

### 2. Retirement Accounts

█ In his fourth point on appeal, Husband challenges the trial court's division of his retirement accounts, asserting that Wife was awarded a portion of his separate retirement assets. Husband's argument is without merit.

█ Retirement benefits are considered marital property and are subject to division in a dissolution proceeding, unless they were accumulated prior to the marriage, in which case they are not marital property and are not divisible. *Garrison v. Garrison,* 255 S.W.3d 37, 42 (Mo. App. W.D.2008). Thus, in dividing a retirement account, the trial court should separate the account into its marital and nonmarital portions according to the source-of-funds rule and set aside the nonmarital portion to the spouse who earned it. *Id.* We presume the trial court's determination of whether property is marital or nonmarital is correct, and the burden falls upon the appellant to overcome that burden. *Id.*

At trial, Husband contended that $75,000 of his Merrill Lynch IRA retirement account was his separate nonmarital property. He testified the Merrill Lynch IRA account was created from two retirement accounts from previous employers,

Eagle Snacks and Miller. He was employed at Eagle Snacks entirely before his marriage. At trial, Husband submitted a spreadsheet in which he stated on December 31, 2000, his Eagle Snacks 401(k) was worth $26, 370.14, and in August 2008, when it was rolled into the Merrill Lynch account, it was worth $29,817.16. He further calculated that, based on Merrill Lynch's stated rates of return, at the time of trial, his Eagle Snack contribution was worth $39,283.99.

Regarding his Miller 401(k), Husband testified it was valued at $9,107.31 at the time of the marriage. He continued working at Miller during marriage until October 2006. Husband calculated, again based on Merrill Lynch's stated rates of return, that at the time of the trial, the premarital portion of his Miller contribution was $36,655.30. Adding $39,284 plus $36,655, Husband requested he be awarded approximately $75,000 of his Merrill Lynch IRA account as nonmarital separate property.

In its judgment, the trial court did not credit Husband his Eagle Snacks contribution as nonmarital property because Husband did not provide evidence of value of his Eagle Snacks 401(k) at the date of his marriage. Based on the evidence that Husband's Miller 401(k) was worth $9,107.31 at the date of the marriage, the court found Husband's total separate contribution to the Merrill Lynch IRA account was $9,107.31. Applying the formula set forth in *In re Marriage of Herr,* 705 S.W.2d 619, 624 (Mo.App. S.D.1986),[6] the trial court calculated $33,000 of the Merrill Lynch account represented Husband's separate property in the account. Husband

---

**6.** The *Herr* formula provides that if property is acquired through the investment of marital funds and nonmarital funds, the proportion of the marital interest is to be determined by first calculating the ratio of marital invest-

ment to the total of the marital and nonmarital investment in the property. *In re Marriage of Herr,* 705 S.W.2d 619, 624 (Mo.App. S.D. 1986).

now asserts the court erred in not considering his Eagle Snacks retirement account as nonmarital property.

Husband had the burden to demonstrate to the trial court his Eagle Snacks 401(k) was nonmarital, but he failed to meet that burden here. *Garrison,* 255 S.W.3d at 43; *see also Nelson v. Nelson,* 195 S.W.3d 502, 507 (Mo.App. W.D.2006) (parties bear burden to present evidence sufficient to allow trial court to make fair and accurate valuation of property). Husband failed to present any evidence of what his Eagle Snacks account was worth prior to his marriage, and testified that he did not know the value at the time of the marriage. The earliest valuation he presented was dated December 31, 2000, over one year after the August 1999 marriage. Because Husband failed to present evidence regarding the amount he contributed to his Eagle Snacks 401(k) prior to the marriage, we cannot conclude the trial court erred in not setting aside that portion of the Merrill Lynch IRA account to him as his separate property. *Martinez v. Martinez,* 136 S.W.3d 886, 889–90 (Mo.App. W.D.2004) (where no evidence was presented indicating amount husband contributed to pension plan prior to marriage, appellate court cannot conclude that trial court erred in not setting aside portion of IRA as separate property). Point four on appeal is denied.

### 3. Distribution of Marital Property

In his fifth point on appeal, Husband argues the trial court erred in its distribution of property because the 47%–53% division, between Husband and Wife respectively, constituted an abuse of discretion. Husband also claims the court failed to consider his contribution of separate funds to the marital property. We consider both sub-points concurrently and disagree with both.

In arriving at a just division of the marital property, the trial court should consider "all relevant factors." Section 452.330.1. Some factors to be considered are the economic circumstances of each spouse, the contribution of each spouse to the acquisition of the marital property, the value of the nonmarital property, the conduct of the parties during the marriage, and the custodial arrangements for any minor children. Section 452.330.1(1)–(5). The trial court has broad discretion in dividing marital property, and the division need not be equal as long as it is fair and equitable under the circumstances. *Workman v. Workman,* 293 S.W.3d 89, 96 (Mo. App. E.D.2009).

The court here awarded Husband marital assets of $241,786.22, and awarded Wife marital assets of $282,540, which is a 47%–53% division. Husband challenges this distribution as unequal in light of his greater contribution to the marital assets as the greater wage-earner and his $70,000 contribution of separate funds to the marital property. Before the marriage, Husband owned a condominium, from the sale of which he realized $70,000 in profit. After the parties were married, they purchased a home titled in both their names, using $70,000 realized from the sale of Husband's condominium. Thereafter, the parties sold that home and purchased the current marital residence, which was also titled in both their names. Based on these facts, the trial court determined the $70,000 had been transmuted into marital property. On appeal, Husband does not challenge the transmutation, but argues the trial court erred in not considering his contribution of $70,000 to the marriage.

We see nothing in the record to indicate that the court failed to consider or misapplied these factors in making its distribution. *See Slattery,* 185 S.W.3d at 698. The trial court explicitly considered the

relevant factors set forth in Section 452.330.1, including the earning power of each spouse, that each spouse "contributed to the acquisition of the parties' marital property," Husband's nonmarital separate property of $33,000, that "both parties' behavior contributed to the breakdown of the marriage," and the joint custody plan. Section 452.330.1(1)-(5). Regarding Husband's $70,000 contribution to the marital residence, it is clear that the court opted to not give him credit for this in its division of property, as was in its discretion to do. *Workman,* 293 S.W.3d at 96.

Again, the division of marital property need not be an equal division, so long as it is fair and equitable under the circumstances. *Id.; Sabatino v. Sabatino,* 314 S.W.3d 854, 858 (Mo.App. W.D.2010). The evidence here showed that Husband's economic circumstances are far superior to Wife's. Husband's gross income is more than twice Wife's, and in addition he receives annual bonuses. Further, the court considered the conduct of the parties during the marriage, noting that "both parties' behavior contributed to the breakdown of the marriage." Husband alleged Wife had an alcohol problem, and Wife alleged Husband had multiple affairs during the marriage. In light of these relevant factors, we see no abuse of discretion in the 47%–53% division.

Moreover, Husband has failed to overcome the presumption that the trial court's division of property was correct. *See Waite,* 21 S.W.3d at 51. Any further discussion of the trial court's division of property would not be profitable. *See Weant v. Weant,* 622 S.W.2d 789, 790 (Mo.App. W.D. 1981) (*per curiam*) (trial court's decision regarding distribution of marital property is "so clearly within the trial court's discretion that no extensive discussion would be profitable"). Point five on appeal is denied.

### 4. Insurance Checks

In his sixth point on appeal, Husband argues the trial court erred in not crediting Husband his share of two insurance checks after stating its intention to do so. Husband's argument is without merit.

During the pendency of the dissolution, Wife was involved in two car accidents involving a vehicle titled in both Husband and Wife's names, for which she received two checks of $5,653.73 and $1,605.28. Wife used these amounts as a down payment to purchase a new vehicle. The trial court found that "Husband is entitled to be credited with half the proceeds of the total amount of the checks," equaling $3,629.51. However, in its judgment, the court awarded Wife the entire value of the new vehicle and did not order that Wife reimburse Husband half the insurance proceeds. Nevertheless, where there are inconsistencies between the findings of fact and the judgment, the judgment prevails over the findings of fact. *Foraker v. Foraker,* 133 S.W.3d 84, 94 (Mo.App. W.D.2004). Here, the judgment portion of the dissolution decree divided the separate and marital property/debts pursuant to Exhibit A, which did not award Husband half the insurance proceeds. Thus any inconsistency with the court's findings is reconciled in favor of the court's judgment dividing the property.

Again, we will not interfere in the trial court's broad discretion in dividing marital property unless the division is so heavily and unduly weighted in favor of one party that it amounts to an abuse of discretion. *Slattery,* 185 S.W.3d at 697–98; *Coughlin,* 823 S.W.2d at 75 (Mo.App. E.D.1991). In light of the nearly equal division of the marital assets and debts, we find Husband has failed to overcome the presumption that the trial court's division of property was correct. *See Waite,* 21

S.W.3d at 51. Point six on appeal is denied.

## D. Dissipation of Assets

 In his seventh point on appeal, Husband argues the trial court's finding that he dissipated $19,000 in marital property was against the weight of the evidence. We disagree.

 The trial court has broad discretion to make determinations on issues relating to the dissipation or squandering of marital assets. *Maurer v. Maurer*, 383 S.W.3d 21, 29 (Mo.App. E.D.2012). Where the trial court finds an unjustified withdrawal of marital funds, it has discretion to effect reimbursement. *Neal v. Neal*, 281 S.W.3d 330, 342 (Mo.App. E.D.2009). To account for the dissipated assets, the court may reduce the offending spouse's share of the division or order reimbursement. *Dowell v. Dowell*, 203 S.W.3d 271, 279 (Mo. App. W.D.2006). Funds that are used to pay marital debts or ordinary living expenses are not considered dissipated. *Id.* at 280.

The evidence here supports the trial court's judgment charging Husband the value of the dissipated marital assets. Husband testified that during the parties' separation in January 2010, he wrote two checks to his parents for a total of $19,000. He testified he had borrowed this amount from them during college with the understanding that he would repay it at some point. In January 2010, his parents were experiencing financial difficulties and requested he pay the money back. Wife, however, testified Husband had already repaid the amount he borrowed from his parents for student loans, and the two checks he wrote them in January 2010 were an attempt to hide money. The trial court specifically found Husband's testimony regarding the loans not credible, and

determined he had dissipated marital assets in the amount of $19,000.

We defer to the trial court's determinations regarding credibility and we will not second guess the court's judgment of Husband's credibility. *Neal*, 281 S.W.3d at 337; *Pearson v. Pearson*, 22 S.W.3d 734, 739 (Mo.App. W.D.2000). The trial court's finding that Husband dissipated marital assets was not an abuse of discretion. Point seven on appeal is denied.

## E. Custody

Husband's eighth and ninth points both address custody of the two minor children.

### 1. Standard of Review

 Our review of an order of child custody is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), under which we must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Maurer*, 383 S.W.3d at 26. "We give greater deference to the trial court in child custody cases than in other types of cases because the trial court is in the best position to judge the credibility of the parties." *Durbin v. Durbin*, 226 S.W.3d 876, 879 (Mo.App. W.D.2007) (internal quotations omitted). We must affirm the judgment under any reasonable set of circumstances and will only set aside the judgment upon a firm belief that the trial court was wrong, exercising extreme caution. *Ream–Nelson v. Nelson*, 333 S.W.3d 22, 26 (Mo.App. W.D. 2010). We view the evidence in a manner favorable to the judgment and disregard contrary evidence, and we defer to the trial court even if the evidence could support a different conclusion. *Sullins v. Knierim*, 308 S.W.3d 241, 246 (Mo.App. E.D.2010).

## 2. Joint Physical Custody

In his eighth point on appeal, Husband argues the trial court's grant of joint legal and joint physical custody of the minor children was against the weight of the evidence, in that the court failed to address Husband's contention that Wife had an alcohol problem and was abusive to the minor children.[7] We disagree.

Missouri law provides that a court shall determine custody in accordance with the best interests of the child. Section 452.375.2 RSMo (Cum.Supp.2005). In determining the child's best interests, the court must consider: (1) the wishes of the parents; (2) the needs of the child for a relationship with both parents and the willingness of the parents to actively perform the functions as a parent for the needs of the child; (3) the interaction and interrelationship of the child with siblings and any other person who may affect the child's best interests; (4) which parent is more likely to allow the child frequent, continuing, and meaningful contact with the other parent; (5) the child's adjustment to school and community; (6) the mental and physical health of all individuals involved; (7) the intention of any parent to relocate the principal residence of the child; and (8) the wishes of the child. Section 452.375.2(1)-(8).

The trial court stated it had considered all the evidence adduced that had bearing on the statutory factors set forth in Section 452.375. The court specifically discussed the wishes of the parents, the willingness of each parent to actively perform the functions of a parent, the parents' ability to cooperate with each other in the children's best interest, the children's adjustment to school, and the intention of Husband to move the children to a different school. Section 452.375.2(1), (2), (4), (5), (7); *Rosito v. Rosito*, 268 S.W.3d 410, 416 (Mo.App. W.D.2008) (while trial court need not discuss every factor, it must discuss relevant factors).

The essence of Husband's challenge on appeal is that the trial court should have placed greater weight on certain evidence or factors when determining custody arrangements. He claims the court failed to consider Wife's mental and physical health, and, specifically, her alleged alcohol problem.

The evidence adduced at trial was flattering to neither parent. Husband contended at trial that Wife had an alcohol problem. He cited a DWI she received during the pendency of the dissolution and asserted that on another occasion she picked up the children from a babysitter after having consumed alcohol at dinner. He did not contend how much alcohol she had consumed or whether she was over the legal limit. While we have grave concerns about drinking and driving with the minor children, absent proof of such, we will not second guess the trial court's determinations regarding credibility and weight of evidence. *See Neal*, 281 S.W.3d at 337 (appellate courts defer to trial court's determinations of witness credibility and we view evidence and inferences in light most favorable to judgment). Wife admitted she had received a DWI and testified that as a result she hardly drank at all any more. She testified that she drank a few beers during the week, but would not have even two beers if she was driving. She testified that Husband also drank a similar amount. The record on its face does not support Father's contention of an alcohol problem sufficient to affect custody, and thus it was not error for the trial court to

---

**7.** Husband also reasserts his Rule 73.01 argument, which we have already addressed in point one.

not discuss it. *See Rosito*, 268 S.W.3d at 416.

Similarly, the record does not support Husband's allegation that Wife was abusive[8] to the minor children. Section 210.110(1) RSMo (Cum.Supp.2011) defines abuse as "any physical injury, sexual abuse, or emotional abuse inflicted on a child other than by accidental means by those responsible for the child's care, custody, and control, except that discipline including spanking, administered in a reasonable manner, shall not be construed to be abuse."

Husband pleaded no express allegations of abuse such as would have triggered mandatory appointment of a *guardian ad litem* under Section 452.423. Husband's claims of abuse, which appears to have been raised for the first time at trial, were that Wife had a short temper and "would administer beatings and spankings" or "was quick to administer spankings" to the younger child. These allegations, without more, do not necessarily constitute abuse.

We give great deference to the trial court regarding child custody. Looking at the entire record, we find the trial court's determination that it was in the best interests of the children for the parties to be awarded joint legal and joint physical custody was supported by substantial evidence. *See Hendry v. Osia*, 337 S.W.3d 759, 762 (Mo.App. E.D.2011). Point eight on appeal is denied.

### 3. Residential Parent

█ In his ninth point on appeal, Husband contends the court's order making Wife the residential parent was against the weight of the evidence, because Husband was awarded the marital residence while Wife did not yet have her own residence.

A parent's intent to relocate is a statutory factor for the court to consider under Section 452.375.2(7), when determining who will be the residential parent. The evidence adduced at trial revealed that the minor children were doing well in their current school. The older child was in the gifted program, and the younger child had special needs for which he was receiving additional services through the school. Wife testified she intended to lease a home in the area to allow the children to attend the same school. Husband testified he intended to sell the marital home and transfer the children to a different school within the same school district. The court expressed concern at trial that although the younger child would be in the same school district, if he changed schools he would not have the same case manager and there would be a different "culture" of how to treat special needs students. Although Husband calls the court's concerns "speculative," we defer to the trial court's determinations of witness credibility and we view evidence and inferences in the light most favorable to judgment. *Neal*, 281 S.W.3d at 337.

Sufficient evidence supports the trial court's award of residential custody to Wife. Point nine on appeal is denied.

### F. Child Support

In his tenth point on appeal, Husband argues the trial court erred in calculating the child support award, because the court improperly calculated Husband's income, included an incorrect maintenance amount, and awarded Mother the tax exemptions.[9] We disagree.

---

8. Husband asserts for the first time in his argument section that Wife also neglected the children. We do not address issues not raised in the point relied on. *V.M.B. v. Mo. Dental Bd.*, 74 S.W.3d 836, 839 (Mo.App. W.D.2002).

9. Husband also reasserts his Rule 73.01 argument, which we have already addressed in point one.

An award of child support is within the sound discretion of the trial court. *Scott v. Scott*, 157 S.W.3d 332, 336 (Mo.App. E.D.2005). In the absence of a manifest abuse of discretion, the appellate court will not substitute its judgment for that of the trial court's in the award of child support. *See id.* We view the evidence in a manner favorable to the judgment and disregard contrary evidence, and we defer to the trial court even if the evidence could support a different conclusion. *Wynn v. Wynn*, 738 S.W.2d 915, 918 (Mo.App. E.D.1987).

In determining an award of child support, the trial court must first determine the presumed child support amount in accordance with the Form 14; and second, after considering all relevant factors, the trial court must determine whether to rebut the Form 14 amount as unjust or inappropriate. *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App. W.D.1996). To calculate the Form 14 amount, the trial court can accept the Form 14 submitted by either party or calculate its own. *Kays v. Kays*, 209 S.W.3d 523, 526–27 (Mo.App. E.D.2006). There is a rebuttable presumption that the Form 14 calculation used by the court is correct. Section 452.340.9; *Trausch–Azar v. Trausch*, 983 S.W.2d 199, 202 (Mo.App. E.D.1998).

In the Judgment here, the trial court calculated its own Form 14 and ordered child support in the amount of $1,401 per month. The amount was based on gross income for Husband of $11,480 per month, gross income for Wife of $4,266 per month, a $1,100 credit to Husband for his maintenance payments to Wife, a total adjusted child care cost of $750, and a credit to Husband of $190 for health insurance costs for the minor children.

Husband first contends the trial court improperly calculated his income by including in his income an estimated bonus of $11,799, when the evidence did not show Husband had received a bonus in 2011. To determine a parent's gross income for purposes of calculating the child support amount, the trial court is instructed to consider "[o]vertime compensation, bonuses, earnings from secondary employment, recurring capital gains . . ., in whole or in part" as appropriate. Mo. R. Civ. P. Form 14, Line 1, Direction. When determining whether it is appropriate to consider bonus compensation, Comment D to the Form 14 provides that the court shall consider all relevant factors, including the past amounts of bonus income received and the realistic expectation that the parent will continue to receive bonuses in similar amounts. Mo. R. Civ. P. Form 14, Line 1, Comment D.

Husband testified at trial that it was "too early to tell" if he would receive a bonus in 2011. Nevertheless, the evidence adduced at trial revealed that in 2010 Husband received a bonus of $11,000, in 2009 he received a bonus of approximately $51,000, and in 2008 he received a bonus of $31,864. It is for the trial court to accept or reject the reliability and weight of a pattern of bonus income, and we afford great deference to the trial court's determinations. *Bolton v. Bolton*, 950 S.W.2d 268, 273 (Mo.App. E.D.1997). In this case, the trial court's determination of Husband's monthly gross income, including bonus income was within the range of evidence presented. *Reed v. Reed*, 969 S.W.2d 287, 289 (Mo.App. E.D.1998) (no error when court's calculation of income falls within range supported by evidence). Therefore, the trial court did not abuse its discretion by including Husband's bonus income in his monthly gross income.

Second, Husband contends that because the trial court erred in its calculation of the maintenance award, the Form 14 in-

correctly credited the maintenance amount. In point two, we reversed and remanded for the trial court to consider Wife's ability to meet her reasonable needs in light of her portion of the marital assets. Should the trial court modify the maintenance award, it will need to recalculate the Form 14 to reflect the changed amount of maintenance.

■ Third, Husband contends the trial court erred in awarding Wife tax exemptions for the minor children. Assumption 7 of the instructions to Form 14 assumes that the parent entitled to receive support receives the exemption. Mo. R. Civ. P. Form 14, Assumptions (7) ("[t]he schedule of basic child support obligations assumes that the parent entitled to receive support claims the tax exemption for the children entitled to support"); *see also Nevins v. Green*, 317 S.W.3d 691, 699 (Mo.App. W.D. 2010). The trial court's judgment here, which complies with the explicit instructions of the Form 14, does not constitute an abuse of discretion. Point ten on appeal is denied.

## G. Attorney's Fees

■ In his eleventh and final point on appeal, Husband argues the trial court abused its discretion in ordering him to pay $10,000 of Wife's attorney's fees, because: (1) both parties had sufficient funds to pay his or her own fees; and (2) the effect of the order was to double charge him, in that he was also ordered to pay a line of credit Wife used to pay some of her attorney's fees. We disagree.

■ "Generally speaking, parties to a domestic relations case are responsible for paying their own attorney's fees." *Ethridge v. Ethridge*, 239 S.W.3d 676, 684 (Mo.App. E.D.2007). However, the trial court has the discretion to award attorney's fees pursuant to Section 452.355.1 after considering certain relevant factors,

including the financial resources of both parties, the merits of the case, and the actions of the parties during the pendency of the action. *Schubert*, 366 S.W.3d at 75. The trial court has broad discretion in awarding or denying a party's request for attorney's fees, and we will not overturn a trial court's order absent a showing of abuse of this broad discretion. *In re Marriage of Brown*, 310 S.W.3d 754, 758 (Mo. App. E.D.2010). Moreover, the trial court is considered an expert on attorney's fees, and we presume its award of such fees is correct. *Short v. Short*, 356 S.W.3d 235, 248 (Mo.App. E.D.2011); *Andrews v. Andrews*, 344 S.W.3d 749, 750 (Mo.App. E.D. 2011).

■ To show an abuse of discretion, the complaining party must show the court's decision was against the logic of the circumstances and was so arbitrary and unreasonable as to shock one's sense of justice. *Andrews*, 344 S.W.3d at 750. Husband failed to make such a showing here. The trial court stated its decision was made "pursuant to" Section 452.355.1, and the record shows that Husband has substantially greater earning capacity than Wife.

Husband next argues he was effectively ordered to pay more than $10,000 of Wife's attorney's fees, because some of the debt allocated to him in the trial court's distribution of the parties debts had been incurred by Wife to pay her attorney's fees. Wife testified that she took out a home equity loan against the marital residence in the amount of $9,600 shortly before filing the petition for dissolution. She used $3,500 of the loan to pay her attorney's retainer and also to pay the court filing fees. As of the time of trial, she had paid down the loan amount to $8,458. Husband was allocated this home equity

loan in the court's distribution of marital debts.

Whether the trial court ordered Husband to pay $10,000 or $13,500 in Wife's attorney's fees, Husband is still unable to show the court's decision was against the logic of the circumstances and was so arbitrary and unreasonable as to shock one's sense of justice. *Id.* We see nothing in the record to support a finding that the trial court's award of attorney's fees was an abuse of discretion. *See Short*, 356 S.W.3d at 248. Point eleven on appeal is denied.

### III. CONCLUSION

That part of the judgment awarding maintenance is reversed and remanded for the trial court to consider Wife's ability to meet her reasonable needs in light of her portion of the marital assets. In all other respects, the judgment of the trial court is affirmed.

GARY M. GAERTNER, JR. C.J., and ELIZABETH B. HOGAN, J., Sp.J., concur.